567 S.E.2d 881

POND PLACE PARTNERS, INC., American Federal
Bank, FSB, as trustee for Mary M. Pearce, and
Edwin P. Collins, Respondents,

v.

David C. POOLE, Mary T. Cruikshank, Estate of Robert J.
Maxwell, Jr., Faust Nicholson, through his Guardian
ad Litem, Laurens C. Nicholson, II, Defendants,

**Of Whom David C. Poole is, Appellant.**

No. 3521.

Court of Appeals of South Carolina.

Heard May 8, 2002.
Decided June 17, 2002.
Rehearing Denied Aug. 23, 2002.

4

6

Charles E. Carpenter, Jr. and S. Elizabeth Brosnan, of Richardson, Plowden, Carpenter & Robinson, of Columbia; and James R. Gilreath, of Greenville, for appellant.

W. Francis Marion, Jr. and J. Ben Alexander, both of Haynsworth, Sinkler, Boyd, of Greenville, for respondents.

Amicus Curiae: Spencer Andrew Syrett, of Columbia.

ANDERSON, J.:

This is an action for slander of title. Initially, David C. Poole ("Poole"), along with the other named Defendants, filed a declaratory judgment action against a plethora of individuals and entities, including the named Respondents. The Poole group challenged an amendment to the restrictive covenants on the subject property, which reduced the minimum lot size restriction from 5 acres to 1 acre lots. The Poole group concurrently filed a lis pendens covering the property. The Respondents, et. al, answered and counterclaimed, alleging causes of action for slander of title and violation of the South Carolina Frivolous Civil Proceedings Sanctions Act. The trial court granted Pond Place's motion for summary judgment on Poole's declaratory judgment action. The court found the modification to the restrictive covenants was valid. We subsequently affirmed the trial court in our unpublished opinion *Poole, et. al v. Pond Place Partners, Inc., et. al,* Op. No. 1997–UP–129 (S.C. Sup.Ct.App. filed Feb. 12, 1997), *cert. denied* (Jan. 12, 1998). Thereafter, the Pond Place group prosecuted their actions for slander of title and violation of the South Carolina Frivolous Civil Proceedings Sanctions Act. After a multi-day trial, the jury found only Poole liable for slander of title and awarded actual and punitive damages to Pond Place Partners and Edwin P. Collins. Poole appeals. We reverse.

## FACTS/PROCEDURAL BACKGROUND

### I. Underlying Grant of Summary Judgment

In his order filed January 16, 1995, the circuit judge explains:

The controlling facts in this case are not in dispute. In January 1954, a subdivision known as "Parkins Lake Development" was created. Originally, this development consist-

ed of 15 lots in differing amounts of acreage. On March 30, 1954, the owners of the property in the Development agreed to restrict the property such that no tract would be divided in lots of less that five acres. By agreement these Restrictive Covenants continued unabated until April 1, 1974. Thereafter, the Covenants would automatically be extended for successive ten (10) year periods unless the property owners agreed to change the Covenants by a "vote of a majority of the then owners of the tracts." The property owners abided by these restrictions until March 31, 1994. At that time, a majority of the *then* property owners entered into the "Amendment to Subdivision Restrictions." Effective April 1, 1994, the Restrictive Covenants were amended permitting lots to be subdivided into tracts of not less than one acre. The signatures on the Amendment to the Subdivision Restrictions were witnessed and properly probated. The Amendment was duly filed with the Greenville County RMC Office.

(emphasis in original, internal footnotes omitted).

On July 19, 1994, Poole[1] brought an action pursuant to the Uniform Declaratory Judgment Act[2] to have the court determine if the "Amendment to the Subdivision Restrictions" was valid and enforceable. On the same day, Poole filed a lis

1. Poole was not the only original plaintiff in the underlying action. The ·original complaint was captioned: *David C. Poole, Mary T. Cruikshank, ·Robert J. Maxwell, Jr., Faust Nicholson, Carol V. Daves, Robert G. Schwartz, Sherri E. Schwartz, John J. Randall, Angela M. Randall v. Pond Place Partners, Inc., American Federal Bank, FSB, as Trustee for Mary M. Pearce, William V. McCrary, Jr., Esta B. McCrary, Edwin P. Collins,* Helen D. Wells, AMP–AKZO Company, A General Partnership of State of New York, Inc., Lydia W. Kellett, Harold Gallivan, Betty C. McCoy, Max W. Kennedy, Gwen W. Kennedy, Lenore N. Chambers, J.E. Chambers, Robert L. Creech, Karen B. Creech, and J.M.S., Inc. (Named Respondents and Defendants in the present appeal are underlined.). Later, however, "due to agreement between the parties," the circuit judge states in footnote number three in his January 16, 1995, order, only four of the original nine plaintiffs remained: David C. Poole, Mary T. Cruikshank, Robert J. Maxwell, Jr., and Faust Nicholson.

For simplicity, because Poole is the only party now appealing, we will use the name "Poole" to mean himself and, where appropriate, the other three plaintiffs in the original declaratory judgment action.

2. S.C.Code. Ann. §§ 15–53–10 to –140 (1977 & Supp.2001).

pendens "pursuant to the Declaratory Judgment Act to affirm and validate restrictive covenants and enforcement thereof." The then defendants answered and counterclaimed, alleging violation of the South Carolina Frivolous Civil Proceedings Sanctions Act[3] and an action for slander of title.

On November 15, 1994, the original defendants filed their notice and motion for summary judgment "on the basis that there is no genuine dispute as to any material fact, in that it is undisputed that a majority of the property owners voted to amend the Deed Restrictions to allow development of the property on one (1) acre tracts." The Circuit Court granted the motion for summary judgment. Concurrently, the court ordered the lis pendens filed by Poole dissolved.[4]

The circuit judge granted summary judgment primarily upon a finding that the signed and probated document purporting to amend the covenants constituted a proper "vote" to change the covenants. He noted that Poole failed to cite any authority to support his contention that a secret ballot "vote" was required and that, even if the restrictive covenants could be so read, they must be construed in favor of the construction that will least restrict the property:

> The facts to which the parties agree are controlling in this instance. The Restrictive Covenants at issue dated March 30, 1954 were effective until April 1, 1974. Thereafter, the Covenants were extended for successive ten year periods "unless by vote of a majority of the then owners of the tracts agreed to change the Covenants either in whole or in part." The current owners of the tracts of land are a matter of public record. The document known as "Amend-

---

3. S.C.Code Ann. §§ 15–36–10 to –50 (Supp.2001).

4. The lis pendens was not actually dissolved at the time of the court's order:

> As a general rule, the service of a notice of appeal in a civil matter acts to automatically stay matters decided in the order on appeal, and to automatically stay the relief ordered in the appealed order, judgment, or decree. This automatic stay continues in effect for the duration of the appeal unless lifted by order of the trial judge, appellate court, or judge or justice thereof. The lower court retains jurisdiction over matters not affected by the appeal including the authority to enforce any matters not stayed by the appeal.
>
> Rule 225, SCACR.

ment to Subdivision Restrictions" dated March 31, 1994, is equally clear and unambiguous in its terms. The Amendment modifies Paragraph 3 of the original restrictive covenants dated March 30, 1954, such that the land within the Subdivision can be subdivided into lots of no less than one acre. The signatures appearing on the Amendment represents a majority of the present owners of the tracts within the subdivision. Despite these undisputed facts, Plaintiffs urge this Court to find the word "vote" ambiguous because the methodology of how the vote is to be taken is not defined in the document. The Court declines to accept this offer.

Poole petitioned the court to vacate, reconsider, alter and/or amend his order. The judge declined, finding in an order filed April 5, 1995, that it was clear the majority of property owners had voted to amend the covenants. The circuit judge explained:

Despite tallying the votes by four alternative methods (by assigning votes to each of the twenty-two lots, by assigning votes only to owners with five acres or more, by assigning votes to the original remaining fourteen lots, and by assigning votes to each individual owner), the Court arrived at the same result: the majority of land owners voted to change the property restrictions from a five acre minimum to a one acre minimum.

Poole appealed. While this appeal was still pending, Pond Place applied to the Circuit Court to have the automatic stay lifted, which would "allow[ ] them to freely alienate their property during the pendency of the appeal, subject to the restrictions found in the AMENDMENT TO SUBDIVISION RESTRICTIONS, filed with the Greenville County RMC, and dated March 31, 1995," or, alternatively, "require the appellants to post sufficient bond to compensate defendants for any economic damages which they might suffer if they cannot sell the property during the automatic stay, yet ultimately prevail on the appeal."

The circuit judge declined to grant this relief because neither of the counterclaims had yet been addressed by the court and, in his discretion, the judge did not "find bond appropriate in this case." Pond Place moved for reconsidera-

tion of this order because the "[s]tay imposed by the Appeal [of Poole to the Court of Appeals] effectively enjoins these Defendants from freely selling their land." The court disagreed and denied Pond Place's motion for reconsideration; however, it granted leave to petition the appellate court for supersedeas. On October 13, 1995, the South Carolina Supreme Court filed its order refusing to lift the automatic stay or require a bond. The Court stated:

> Because there appears to be a legitimate dispute as to whether appellants were misled by respondents into believing that they would be able to vote on any changes in the subdivision restrictions at a subsequent meeting, we deny respondents' request to lift the automatic stay and their request to require the posting of a bond.

Thereafter, in our unpublished opinion of *Poole, et. al v. Pond Place Partners, Inc., et. al,* Op. No. 1997–UP–129 (S.C. Ct.App. filed Feb. 12, 1997), *cert. denied* (Jan. 12, 1998), we affirmed the grant of summary judgment in favor of Pond Place. We concluded our opinion, stating: "We find no evidence to refute the methods used by the trial judge. Clearly, the trial judge thoroughly reviewed the evidence. We note that none of the property owners wish to remove their signatures from the Amendment. Therefore, the order of the trial judge is affirmed."

By order dated January 12, 1998, the Supreme Court denied Poole's petition for writ of certiorari. In the appeal now before this Court, Poole acknowledges the covenant amendments were deemed properly adopted. In fact, Poole writes at length in his brief that he is not attempting to re-litigate the resolution of the vote amending the covenants.

## II. Present Litigation

After Poole's declaratory judgment action was dismissed by summary judgment, Pond Place Partners, *et. al,* prosecuted their actions for slander of title and violation of the South Carolina Frivolous Civil Proceedings Sanctions Act. On April 9, 1999, the circuit judge merely denied both Pond Place's motions for summary judgment on its two causes of action, as well as Poole's motion to dismiss the counterclaims. However, in a subsequent order filed on October 4, 1999, denying Pond Place's motion for reconsideration, the circuit judge wrote:

After carefully reviewing the Motion and the case file including appellate briefs to the South Carolina Court of Appeals, this Court finds that counterclaiming Defendants have not proven by a preponderance of the evidence that Plaintiffs' initiation and continuation of this lawsuit is being done so primarily for a purpose other than that of securing the proper discovery, joinder of parties, or adjudication of the claim upon which the proceedings are based.

Thereafter, during pre-trial motions, Poole argued the October order effectively dismissed the counterclaim for violation of the South Carolina Frivolous Civil Proceedings Sanctions Act. The court disagreed. However, the trial judge removed the claim from jury consideration. Essentially, the judge found that a ruling on the frivolous proceedings depended on the resolution of the underlying legal cause of action for slander of title. "I couldn't grant [Pond Place's summary judgment] motion under the frivolous proceedings act ... because I considered this slander of title action still being alive." Apparently, therefore, the frivolous proceedings claim is still pending.

The slander of title action was tried before a jury. There, Pond Place presented testimony attempting to show that, as the trial court and this Court eventually found, there was never an issue regarding the clear outcome and propriety of the vote amending the restrictive covenants in the Parkins Lake Subdivision. Also, Pond Place elicited testimony that the lis pendens interfered with the marketability of the lots in the subdivision which caused substantial damages to those parties attempting to dispose of or develop their property under the amended version of the covenants.

Poole, on the other hand, tried to demonstrate that, in 1994 when he heard of the covenant amendments, he was justified in testing these amendments with his declaratory judgment action. He essentially defended his actions by showing he prosecuted the case upon the advice of competent attorneys. For example, Poole submitted affidavits from his past and present legal counsel. James R. Gilreath, in a July 27, 1998, affidavit, averred that he has advised Poole "with regard to various aspects of [the underlying declaratory judgement action]." Gilreath stated:

Prior to this case being filed I advised Mr. Poole that in my opinion there was a serious issue regarding the manner in which the subdivision restrictions had been amended. Prior to this opinion I had done some research, reviewed the public records and plats relating to the subdivision restrictions and discussed these issues with several attorneys in Greenville who are experienced real estate attorneys. In short, I believe this was a meritorious action which needed to be brought in order to clear up numerous issues which were raised by the method and manner in which the subdivision restrictions were amended.

Dana C. Mitchell, III, who was initial counsel to Poole until a conflict of interest arose, avowed in an affidavit dated July 28, 1998, that he researched the law and also met with experienced attorneys regarding the case:

Based on the above, I advised the Plaintiffs (prior to the initiation of this litigation) that there was a serious legal issue regarding the manner in which the subdivision restrictions have been amended which could, in good faith, be the subject of litigation to resolve the disputed issues which were involved. Further, I advised the Plaintiffs that I believed their position had legal merit, at least sufficient to warrant it being submitted to a court or jury for determination.

Lastly, John G. Cheros, an attorney who was consulted by Gilreath before the underlying declaratory judgment action was filed, declared in an affidavit dated August 4, 1998, that he reviewed the public records of the Park Lake Development:

After reviewing these records I advised Mr. Gilreath that in my opinion there was a significant issue regarding the manner in which the subdivision restrictions had been amended. From my review of these records it appeared there was a serious question involved in the manner in which the owners of the property voted and that short of a declaratory action, there was, in my opinion, a cloud on the title of Mr. Poole's property. While I am not familiar with the issues raised in this particular action, I believe that an action for declaratory judgment to determine the validity of the amendments to the Parkins Lake Subdivision restrictions was meritorious, involved real issues, and was neces-

sary to clear up questions raised by the method and manner in which these restrictions were amended.

At the close of Pond Place's case, among other motions, Poole moved for a directed verdict. He argued the lis pendens was authorized by law, was properly filed, and was absolutely privileged. The motion was denied. Then, at the close of his own case, Poole renewed his motion for directed verdict. The trial judge likewise denied this motion, finding that the filing of a lis pendens is not absolutely privileged, but is qualifiedly privileged.

In its closing arguments, Pond Place argued the trial was essentially about "Mr. Poole." Pond Place effectively dismissed all but "Mr. Poole" as a defendant to the slander of title action and requested a full judgment against only him. The jury rendered its verdict in favor of Pond Place and Edwin Collins against Poole alone. The verdict reads:

> Verdict for Pond Place Partners, Inc for $157,584.$^{00}/_{100}$ special damages and $75,000.$^{00}/_{100}$ punitive damages against David C. Poole.

> Verdict for Edwin P. Collins for $220,416.$^{00}/_{100}$ special damages and $75,000.$^{00}/_{100}$ punitive damages against David C. Poole.

After the jury was excused, Poole moved for a JNOV, a new trial, and a new trial nisi. Poole's attorney argued there was no evidence in the record to support the jury's finding of malice and the filing of the lis pendens was absolutely privileged. The court denied the motions for JNOV and new trial absolute and scheduled a hearing to consider remittitur arguments. At the later hearing, the circuit judge commented he "[thought Poole] could have filed a lawsuit without filing a lis pendens.... and there wouldn't be any slander of title action." He declined to adjust the jury's verdict. Poole appeals.

## STANDARD OF REVIEW

Poole argues he was entitled to a directed verdict because: (1) the elements of slander of title were not established; and (2) because the filing of his lis pendens was absolutely privileged. Alternately, Poole argues he is entitled to a new trial based on various evidentiary errors and the denial of some

requested charges. We determine the action on the former arguments; thus, we need not address Poole's arguments for a new trial.

■■■ "When reviewing the denial of a motion for directed verdict or judgment notwithstanding the verdict, this Court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party." *Wintersteen v. Food Lion, Inc.*, 344 S.C. 32, 35, 542 S.E.2d 728, 729 (2001) (citing *Steinke v. South Carolina Dep't of Labor*, 336 S.C. 373, 520 S.E.2d 142 (1999)). "If the evidence as a whole is susceptible of only one reasonable inference, no jury issue is created and a directed verdict motion is properly granted." *Wintersteen*, at 35, 542 S.E.2d at 729 (citing *Bloom v. Ravoira*, 339 S.C. 417, 529 S.E.2d 710 (2000)).

■■■ "In deciding whether to grant or deny a directed verdict motion, the trial court is concerned only with the existence or non-existence of evidence." *Sims v. Giles*, 343 S.C. 708, 714, 541 S.E.2d 857, 861 (Ct.App.2001). The trial court can only be reversed by this Court when there is no evidence to support the ruling below. *Swinton Creek Nursery v. Edisto Farm Credit, ACA*, 334 S.C. 469, 514 S.E.2d 126 (1999). If the evidence as a whole is susceptible of more than one reasonable inference, the case should be submitted to the jury. *Gamble v. International Paper Realty Corp. of S.C.*, 323 S.C. 367, 474 S.E.2d 438 (1996); *Yadkin Brick Co. v. Materials Recovery Co.*, 339 S.C. 640, 529 S.E.2d 764 (Ct.App. 2000); *see also Weir v. Citicorp Nat'l Servs., Inc.*, 312 S.C. 511, 435 S.E.2d 864 (1993) (illustrating an appellate court must apply the same standard when reviewing the trial judge's decision on such motions). "When considering directed verdict and JNOV motions, neither the trial court nor the appellate court has the authority to decide credibility issues or to resolve conflicts in the testimony or evidence." *Boddie–Noell Properties, Inc. v. 42 Magnolia Partnership*, 344 S.C. 474, 482, 544 S.E.2d 279, 283 (Ct.App.2000), *cert. granted.*

### *LAW/ANALYSIS*

### I. Declaratory Judgment Action and Lis Pendens

■■■ Poole filed the underlying action attempting to invalidate the amendments to the covenants pursuant to the Uni-

form Declaratory Judgments Act.[5] "The Declaratory Judgment Act should be liberally construed to accomplish its intended purpose of affording a speedy and inexpensive method of deciding legal disputes and of settling legal rights and relationships, without awaiting a violation of the rights or a disturbance of the relationships." *Graham v. State Farm Mut. Auto. Ins. Co.*, 319 S.C. 69, 71, 459 S.E.2d 844, 845 (1995) (citing *Williams Furniture Corp. v. Southern Coatings & Chemical Co.*, 216 S.C. 1, 56 S.E.2d 576 (1949)); S.C.Code Ann. § 15–53–130 (1977).

"To state a cause of action under the Declaratory Judgment Act, a party must demonstrate a justiciable controversy." *Graham*, 319 S.C. at 71, 459 S.E.2d at 845 (citing *Brown v. Wingard*, 285 S.C. 478, 330 S.E.2d 301 (1985)). "A justiciable controversy exists when a concrete issue is present, there is a definite assertion of legal rights and a positive legal duty which is denied by the adverse party." *Graham*, at 71, 459 S.E.2d at 845 (citing *Power v. McNair*, 255 S.C. 150, 177 S.E.2d 551 (1970)). This requirement is satisfied by "[a]ny person interested under a deed . . . written contract or other writings constituting a contract or whose rights, status or other legal relations are affected by a . . . contract or franchise may have determined any question of construction or validity arising under the instrument, . . . contract or franchise and obtain a declaration of rights, status or other legal relations thereunder." S.C.Code Ann. § 15–53–30 (1977); *see also* Rule 57, SCRCP.

Poole concurrently filed a lis pendens on the property of the Parkins Lake Subdivision. It is undisputed that Poole, as well as every other party listed in the caption *sub judice*, has some ownership interest in the subdivision. The purpose of a notice of pendency of an action is to inform a purchaser or encumbrancer that a particular piece of real property is subject to litigation. *Shelley Constr. Co. v. Sea Garden Homes, Inc.*, 287 S.C. 24, 336 S.E.2d 488 (Ct.App. 1985); *Wooten v. Seanch*, 187 S.C. 219, 196 S.E. 877 (1938). "A properly filed lis pendens binds subsequent purchasers or encumbrancers to all proceedings evolving from the litigation." *South Carolina Nat'l Bank v. Cook*, 291 S.C. 530, 532, 354

---

5. S.C.Code. Ann. §§ 15–53–10 to –140 (1977 & Supp.2001).

S.E.2d 562, 562 (1987). Generally, the filing of a lis pendens places a cloud on title which prevents the owner from freely disposing of the property before the litigation is resolved. *Shelley Constr.,* 287 S.C. at 24, 336 S.E.2d at 491–492.

A lis pendens may be filed "[i]n an action affecting the title to real property . . . not more than twenty days before filing the complaint or at any time afterwards . . . with the clerk of each county in which the property is situated a notice of the pendency of the action, containing the names of the parties, the object of the action and the description of the property in that county affected thereby." S.C.Code Ann. § 15–11–10 (1977). Since the filing of a lis pendens is an extraordinary privilege granted by statute, strict compliance with the statutory provisions is required. *See Cook,* 291 S.C. at 532, 354 S.E.2d at 563 (1987) (finding a complaint filed more than twenty days after the filing of the lis pendens renders the lis pendens invalid).

Moreover,

The lis pendens mechanism is not designed to aid either side in a dispute between private parties. Rather, lis pendens is designed primarily to protect unidentified third parties by alerting prospective purchasers of property as to what is already on public record, *i.e.,* the fact of a suit involving property. Thus, it notifies potential purchasers that there is pending litigation that may affect their title to real property and that the purchaser will take subject to the judgment, without any substantive rights.

51 Am.Jur.2d *Lis Pendens* § 2 (2000).

Therefore, an action "affecting the title to real property" clearly allows the filing of a lis pendens by an interested party in order to protect their ownership interest in the property subject to the litigation. Such actions include actions attempting to set aside a fraudulent conveyance of real property, *see Lebovitz v. Mudd,* 293 S.C. 49, 358 S.E.2d 698 (1987); *Dickerson v. Oliphant,* 160 S.C. 288, 158 S.E. 546 (1931); *Berger v. Shea,* 150 Ga.App. 812, 258 S.E.2d 621 (1979); and actions to establish a constructive trust over real estate, *see Finley v. Hughes,* 106 F.Supp. 355 (E.D.S.C.1952); *Kelly v. Perry,* 111 Ariz. 382, 531 P.2d 139 (1975). They also include actions to quiet title, *see Stewart v. Fahey,* 14 Ariz.

App. 149, 481 P.2d 519 (1971); actions to establish the existence of an easement, *see Procacci v. Zacco*, 402 So.2d 425 (Fla.Dist.Ct.App.1981); actions to reform deeds to resolve a boundary dispute, *see Houska v. Frederick*, 447 S.W.2d 514 (Mo.1969); actions for specific performance, *see Panfel v. Boyd*, 187 Ga.App. 639, 371 S.E.2d 222 (1988); *Hauptman v. Edwards, Inc.*, 170 Mont. 310, 553 P.2d 975 (1976); *Wendy's of South Jersey v. Blanchard Mgmt. Corp. of N.J.*, 170 N.J.Super. 491, 406 A.2d 1337 (Ch.Div.1979); and actions for mortgage foreclosures, *see Palmer v. Shelby Plaza Motel, Inc.*, 443 So.2d 285 (Fla.Dist.Ct.App.1983). Where no real property is implicated, however, like when the enforcement of a lien is against the substitute security under the "bonding out" procedure of the mechanic's lien statute rather than against the original real property itself, a notice of pendency of action need not be filed. *Shelley Constr. Co. v. Sea Garden Homes, Inc.*, 287 S.C. 24, 336 S.E.2d 488 (Ct.App.1985); *see also Hansen v. Kohler*, 550 P.2d 186 (Utah 1976) (distinguishing the case of *Birch v. Fuller*, 9 Utah 2d 79, 337 P.2d 964 (1959), in which the court found no privilege for filing a lis pendens because no court action was filed in conjunction with the lis pendens making it not filed in accordance with the law and, therefore, not actionable under slander of title); *Atkinson v. Fundaro*, 400 So.2d 1324 (Fla.Dist.Ct.App.1981) (finding no privilege for the filing of a lis pendens on property that had absolutely no involvement in the underlying litigation); *Ex parte Boykin*, 656 So.2d 821, 826 n. 4 (Ala.Civ.App.1994) (Noting that "[o]ne who places a lis pendens notice on property without a 'colorable claim' of right to or interest in the property subjects themselves to a claim for slander of title.").

## II. Slander of Title

"The term 'slander of title' is defined as a false and malicious statement, oral or written, made in disparagement of a person's title to real or personal property, causing him injury." 50 Am.Jur.2d *Libel & Slander* § 548 (1995). Generally, an action under slander of title may only be maintained by one who possesses an estate or interest in the affected property. *See generally* Jeffrey F. Ghent, *Slander of Title: Sufficiency of Plaintiff's Interest in Real Property to Maintain Action*, 86 A.L.R.4th 738 (1991). "The tort of

slander of title is almost identical to the tort of product disparagement, the only difference being that the former tort involves aspersing the quality of one's title to property and the latter tort involves aspersing the quality of one's property." *Wendy's of South Jersey, Inc. v. Blanchard Mgmt. Corp. of N.J.*, 170 N.J.Super. 491, 406 A.2d 1337, 1338 (Ch.Div.1979).

 Slander of title is grounded in the tort of injurious falsehood. *See id.* ("Both torts are specific examples of the general tort of injurious falsehood and the same privileges which apply to the torts of personal defamation apply to the tort of injurious falsehood."); *Zamarello v. Yale,* 514 P.2d 228 (Alaska 1973); *Procacci v. Zacco,* 402 So.2d 425 (Fla.Dist.Ct. App.1981). In this light, the first comment of section 624 of the Restatement (Second) of Torts explains:

The particular form of injurious falsehood that involves disparagement of the property in land, chattels, or intangible things, is commonly called "slander of title." The earliest cases in which it arose involved oral aspersions cast upon the plaintiff's ownership of land, as a result of which he was prevented from selling or leasing it; and the decisions went upon an analogy to the kind of oral defamation of the person that is actionable only upon proof of special harm. (*See* § 569). The extension of the liability to other kinds of injurious falsehood has left the terms "slander of title," and "disparagement," merely as special names given to this particular form of the tort.

The association with personal defamation through the word "slander" has unfortunately tended to lead the courts to regard the plaintiff's property interest as somehow personified, and so defamed, and thus to look to the law of defamation. "Slander of title," however, differs from personal defamation in at least three important respects. One is that proof of special harm is required in all cases. (*See* § 633). Another is that there must be proof of a greater amount of fault than negligence on the part of the defendant regarding the falsity of the statement. (*See* § 623A, especially Comment d). The third is that because of the economic interest involved the disparagement of property may in a proper case be enjoined, whereas defamation normally cannot.

*Id.* at cmt. a, *quoted in Lone v. Brown,* 199 N.J.Super. 420, 489 A.2d 1192, 1195 (App.Div.1985). The Supreme Court of Rhode Island explained the history of the action slander of title in its state:

> Shortly before the turn of the century our predecessors in *Hopkins v. Drowne,* 21 R.I. 20, 23, 41 A. 567 (1898), recognized the common-law action of slander of title. The court emphasized that damages could be recovered in an action for slander of title upon a showing that the defendant maliciously uttered false statements about the plaintiff's ownership of real estate which resulted in the plaintiff sustaining an actual pecuniary loss.

> The court in *Hopkins* emphasized that in using the term malice it was not using the term in its 'worst sense,' but described malice as an intent to deceive or injure and emphasized that in order to establish malice, the record must present evidence of the making of a false statement that is made with full knowledge of its falsity, and for the specific purpose of injuring the plaintiff.

*Brough v. Foley,* 572 A.2d 63, 67 (R.I.1990).

 By contrast, our modern history with the tort for slander of title is relatively brief. The case of *Huff v. Jennings,* 319 S.C. 142, 459 S.E.2d 886 (Ct.App.1995), sets forth for the first time in South Carolina the specific elements of the common law action for slander of title. The action itself, through our reception statute, has always been a part of the law of South Carolina. Section 15–1–50 provides that "[a]ll, and every part, of the common law of England, where it is not altered by the Code or inconsistent with the Constitution or laws of this State, is hereby continued in full force and effect in the same manner as before the adoption of this section." S.C.Code Ann. § 14–1–50 (1976); *see also State v. Charleston Bridge Co.,* 113 S.C. 116, 126, 101 S.E. 657, 660 (1919) (the reception statute is "merely declaratory in its nature" in stating that South Carolina courts are guided by the principles of the settled common law from England). Slander of title has long been considered a common law action in England. *See TXO Prod. Corp. v. Alliance Resources Corp.,* 187 W.Va. 457, 419 S.E.2d 870, 877–879 (1992), *aff'd,* 509 U.S. 443, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993) (citing authority from the Queen's Bench and King's Bench from the sixteenth and

seventeenth centuries). Therefore, it is the common law of South Carolina as well. *See Huff,* 319 S.C. at 148, 459 S.E.2d at 890. In *Huff,* we merely clarified its position in our jurisprudence.

*Huff* noted that the second Restatement of Torts provides the general guidelines "which modern courts generally follow in identifying the elements of slander of title." *Id.* at 149, 459 S.E.2d at 891. Restatement (Second) of Torts § 623A (1977) provides:

> One who publishes a false statement harmful to the interests of another is subject to liability for pecuniary loss resulting to the other if
>
> (a) he intends for publication of the statement to result in harm to interests of the other having a pecuniary value, or either recognizes or should recognize that it is likely to do so, and
>
> (b) he knows that the statement is false or acts in reckless disregard to its truth or falsity

Additionally, Restatement (Second) of Torts § 624 (1977) annunciates:

> The rules on liability for the publication of an injurious falsehood stated in § 623A apply to the publication of a false statement disparaging another's property rights in land, chattels or intangible things, that the publisher should recognize as likely to result in pecuniary harm to the other through the conduct of third persons in respect to the other's interests in the property.

In light of these Restatement provisions, the Supreme Court of Appeals of West Virginia, in *TXO Production Corporation v. Alliance Resources Corporation,* 187 W.Va. 457, 419 S.E.2d 870 (1992), *aff'd,* 509 U.S. 443, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993),[6] devised a six point test that a plaintiff must establish to prove an action for slander of title. We adopted this test. *Huff,* 319 S.C. at 149, 459 S.E.2d at 891. Therefore, to maintain an action for slander of title in South Carolina, the plaintiff must establish: "(1) the publication (2)

---

6. The appeal to the United States Supreme Court involved only whether the award of punitive damages was so grossly excessive as to violate due process. *TXO Prod. Corp. v. Alliance Resources Corp.,* 509 U.S. 443, 453–466, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993).

with malice (3) of a false statement (4) that is derogatory to plaintiff's title and (5) causes special damages (6) as a result of diminished value of the property in the eyes of third parties." *Id.* (citing *TXO,* 419 S.E.2d at 879).

In *Huff,* Husband asserted a cause of action for slander of title against Wife's divorce attorney. Wife's attorney had filed a lien for attorney's fees against property that Husband had elected to buy out Wife's interest in, as was provided for in the divorce decree. Wife's attorney filed her lien pursuant to a statutory provision this Court found was not applicable to the facts of the case. That is, § 20–3–145 stated that only attorney fees awarded by the court, which these fees were not, constitute an lien on the debtor spouse's property. *Id.* at 145 n. 1, 459 S.E.2d at 888 n. 1. Husband satisfied Wife's debt to remove the cloud on the property so that he could have it refinanced. We found this was an adequate example of slander of title. The "[w]rongfully recording an unfounded claim against the property of another generally is actionable as slander of title." *Id.* at 149, 459 S.E.2d at 891.

### III. Pleadings are Privileged

Privileged communications are either absolute or qualified. "When a communication is absolutely privileged, no action lies for its publication, no matter what the circumstances under which it is published, *i.e.,* an action will not lie even if the report is made with malice." *Hainer v. American Med. Intern., Inc.,* 328 S.C. 128, 135, 492 S.E.2d 103, 106 (1997) (citations omitted). A statement is made with actual malice when the speaker acts with knowledge that the statement is false or with reckless disregard of whether it was false or not. *Fleming v. Rose,* 338 S.C. 524, 526 S.E.2d 732 (Ct.App.2000), *cert. granted; Huff,* 319 S.C. at 150, 459 S.E.2d at 891; *accord Hainer,* 328 S.C. at 135, 492 S.E.2d at 107 ("Actual malice can mean the defendant acted recklessly or wantonly, or with conscious disregard of the plaintiff's rights.").

"The [absolute] privilege covers anything that may be said in relation to the matter at issue, whether it be in the pleadings, in affidavits, or in open court." W. Prosser & W. Keeton, *The Law of Torts,* § 114, at 817 (5th ed.1984). "At

common law, parties to judicial proceedings were granted an absolute privilege to use defamatory language because of the overriding public interest that persons should speak freely and fearlessly in litigation, 'uninfluenced by the possibility of being brought to account in an action for defamation.'" *Stewart v. Fahey*, 14 Ariz.App. 149, 481 P.2d 519, 520–521 (1971). Nearly three score years ago, the New York Supreme Court explained:

> The interest of society requires that whenever men seek the aid of courts of justice, either to assert or to defend rights, of person, property or liberty, speech and writing therein must be untrammelled and free. The good of all must prevail over the incidental harm to the individual. So the law offers a shield to the one who in a legal proceeding publishes a libel, not because it wishes to encourage libel, *but because if men were afraid to set forth their rights in legal proceedings for fear of liability to libel suits greater harm would result, in the suppression of the truth.* The law gives to all who take part in judicial proceedings, judge, attorney, counsel, printer, witness, litigant, a right to speak and to write, subject only to one limitation, that what is said or written bears upon the subject of litigation, that is, is pertinent, relevant, germane thereto.

*Kraushaar v. LaVin,* 39 N.Y.S.2d 880, 883 (N.Y.Sup.Ct.1943) (emphasis added) (citation omitted).

South Carolina has long recognized that relevant pleadings, even if defamatory, are absolutely privileged. *McKesson & Robbins v. Newsome,* 206 S.C. 269, 33 S.E.2d 585 (1945); *Texas Co. v. C.W. Brewer & Co.,* 180 S.C. 325, 185 S.E. 623 (1936); *Rodgers v. Wise,* 193 S.C. 5, 7 S.E.2d 517 (1940); *Sanders v. Rollinson,* 33 S.C. Law (2 Strob.) 447 (1848) (stating an action for slander based on a defamatory affidavit was a non-suit; the proper attack is under malicious prosecution); *accord Lone v. Brown,* 199 N.J.Super. 420, 489 A.2d 1192, 1195 (App.Div.1985) ("It is well established that statements, written or oral, made by judges, attorneys, witnesses, parties or jurors in the course of judicial proceedings, which have some relation thereto, are absolutely privileged from slander or defamation actions, even if the statements are made with malice."); *Kropp v. Prather,* 526 S.W.2d 283, 286 (Tex. Civ.App.1975) ("Any communication, oral or written, uttered

or published in the due course of a judicial proceeding is absolutely privileged and cannot form the basis for a cause of action in libel or slander.").

In *Texas Company v. C.W. Brewer & Company*, 180 S.C. 325, 185 S.E. 623 (1936), the Supreme Court established that pleadings, although they may constitute libel on their own, are absolutely privileged if they are relevant and legitimately related to the issues and inquiry at trial. That is,

> Defamatory matter contained in pleadings filed according to law in a court having jurisdiction, if relevant and pertinent to the issues in the case, is absolutely privileged; and it is immaterial that the allegations are false and malicious and are made under a cover and pretense of a wrongful or groundless suit.... The weight of American authority is that the privilege is absolute when, and only when, the matter tendered is pertinent or material or relevant.

*Id.* at 327, 185 S.E. at 623.

The Court later confirmed in the case of *McKesson & Robbins v. Newsome*, 206 S.C. 269, 33 S.E.2d 585 (1945), that pleadings, even if defamatory, are absolutely privileged. "Libelous or defamatory statements in pleadings, when pertinent or material or relevant to real issues involved, are privileged, that the pertinency or materiality or relevancy of such statements is for the determination of the Court and not a jury, and that in determining this issue pleadings must be liberally interpreted and all doubt resolved in favor of relevancy." *Id.* at 275, 33 S.E.2d at 587.

The above authority accords with the Restatement (Second) of Torts § 587 (1977), which provides:

> A party to a private litigation ... is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding.

Recently, this Court reiterated that the "common law rule protecting statements of judges, parties and witnesses offered in the course of judicial proceedings from a cause of action in defamation is well recognized in this jurisdiction."

*Crowell v. Herring,* 301 S.C. 424, 429, 392 S.E.2d 464, 467 (Ct.App.1990) (citations omitted). That is, an "absolute privilege exists as to any utterance arising out of the judicial proceeding and having any reasonable relation to it, including preliminary steps leading to judicial action of any official nature provided those steps bear reasonable relationship to it." *Id.* at 430, 392 S.E.2d at 467 (citing Restatement (Second) of Torts § 587, cmt. e).

## IV. Other Jurisdictions

"[T]he majority of cases from other jurisdictions that have dealt with the question have held that such filing [of a lis pendens] enjoys the absolute privilege that is accorded to judicial proceedings." *Superior Constr. Inc. v. Linnerooth,* 103 N.M. 716, 712 P.2d 1378, 1380 (1986) (citing *Albertson v. Raboff,* 46 Cal.2d 375, 295 P.2d 405 (Ca.1956); *Stewart v. Fahey,* 14 Ariz.App. 149, 481 P.2d 519 (1971); *Hauptman v. Edwards, Inc.,* 170 Mont. 310, 553 P.2d 975 (1976); *Hansen v. Kohler,* 550 P.2d 186 (Utah 1976); *Wendy's of South Jersey, Inc. v. Blanchard Mgmt. Corp. of N.J.,* 170 N.J.Super. 491, 406 A.2d 1337 (Ch.Div.1979); *Zamarello v. Yale,* 514 P.2d 228 (Alaska 1973); *Procacci v. Zacco,* 402 So.2d 425 (Fla.App. 1981)). The rationale set forth by these jurisdictions is:

 (1) With few exceptions, any publication made in a judicial proceeding enjoys absolute privilege from later charges of defamation.

 (2) The sole purpose of recording a notice of lis pendens is to give to prospective buyers constructive notice of the pendency of the proceedings.

 (3) The notice of lis pendens is purely incidental to the action wherein it is filed, and refers specifically to such action and has no existence apart from that action.

 (4) The recording of a notice of lis pendens is in effect a republication of the proceedings in the action and therefore, it is accorded the same absolute privilege as any other publication incident to the action.

*Linnerooth,* 712 P.2d at 1381; *see also Brough v. Foley,* 572 A.2d 63 (R.I.1990) (holding that since the filing of a lis pendens is incident to the filing of the complaint, if the plaintiff had probable cause to bring the action, then neither of these actions can be considered slander of title.); *Kropp v.*

*Prather*, 526 S.W.2d 283, 287 (Tex.Civ.App.1975) ("Because the recording of a lis pendens is specifically authorized by statute and has no existence separate and apart from the litigation of which it gives notice ... the filing of a notice of lis pendens ... is a part of [a] 'judicial proceeding' " and thus forms no basis for an action for libel or slander.); *Dethlefs v. Beau Maison Dev. Corp.*, 511 So.2d 112, 117 (Miss.1987) ("The lis pendens notice was a privileged communication and therefore not actionable for slander of title."); *Louis v. Blalock*, 543 S.W.2d 715, 718 (Tex.Civ.App.1976) ("[A] claim, either oral or written, asserted in the course of a judicial proceeding, cannot be made the basis of a civil action for slander of title."); *Manders v. Manders*, 897 F.Supp. 972 (S.D.Tex.1995) (finding no basis for a slander of title action arising out of the filing of a lis pendens); *Palmer v. Shelby Plaza Motel, Inc.*, 443 So.2d 285 (Fla.Dist.Ct.App.1983) (lis pendens describing only the property covered by the mortgage which is being foreclosed is absolutely privileged); *Pryor v. Findley*, 949 P.2d 1218 (Okla. Civ.App.1997) (ruling the filing of a divorce petition, which purportedly caused a cloud on title, was protected by absolute privilege for slander of title claim); *Lone v. Brown*, 199 N.J.Super. 420, 489 A.2d 1192 (App.Div.1985) (stating the filing of a lis pendens is merely a republication of the complaint and is, therefore, absolutely privileged).

Several courts cite the seminal California case of *Albertson v. Raboff*, 46 Cal.2d 375, 295 P.2d 405 (Ca.1956), for the proposition that the filing of a lis pendens is absolutely privileged. *Berger v. Shea*, 150 Ga.App. 812, 258 S.E.2d 621 (1979); *Houska v. Frederick*, 447 S.W.2d 514 (Mo.1969); *Stewart v. Fahey*, 14 Ariz.App. 149, 481 P.2d 519 (1971); *see also Kelly v. Perry*, 111 Ariz. 382, 531 P.2d 139 (1975) (citing *Stewart v. Fahey*). Generally, however, where courts do not find that an absolute privilege applies to the filing of a lis pendens in a slander of title action, they find a qualified privilege subject to a finding of malice. *Westfield Dev. Co. v. Rifle Inv. Assocs.*, 786 P.2d 1112, 1116–1118 (Colo.1990) (finding that "a party has only a qualified privilege to interfere with an existing contract by means of initiating litigation and filing pleadings and notice of lis pendens" because the need to restrict lawsuits brought in bad faith outweighs the policy of encouraging free access to the courts under an absolute privilege); *Kensington Dev. Corp. v. Israel*, 142 Wis.2d 894,

419 N.W.2d 241, 244 (Wis.1988) (declaring the filing of a lis pendens is only conditionally privileged; "[i]f the absolute privilege rule is applied, the slander of title statute ... would be nullified because it would be virtually impossible to assert a claim if all communications in judicial proceedings relating to property were absolutely privileged"); *see also* Annotation, *Recording of instrument purporting to affect title as slander of title* 39 A.L.R.2d 840 (1955).

In *Superior Construction, Inc. v. Linnerooth,* 103 N.M. 716, 712 P.2d 1378 (1986), Superior Construction filed a lis pendens in conjunction with an action brought to have a deed of property from a third party to the Linnerooths declared null and void. This action was ultimately dismissed and the Linnerooths were subsequently awarded damages on their counterclaim for slander of title. After discussing the law of privilege from other jurisdictions, the court noted it is "only in extreme cases that a publication made in connection with a judicial proceeding will serve as the basis for a defamatory action." *Id.* at 1382 (citation omitted). These cases include judicial proceedings "in which the defamatory material is irrelevant or immaterial to the cause or subject of inquiry." *Id.* However, since a lis pendens "may be properly filed only if plaintiff pleads a cause of action which involves or affects the title to, or any interest in or a lien upon, specifically described real property," the filing of the lis pendens in conjunction with the underlying complaint, "no matter how malicious or false, was relevant and material to the claim by Superior ... of an ownership interest in the land." *Id.* at 1381–82.

Likewise, in *Wendy's of South Jersey, Inc. v. Blanchard Management Corporation of New Jersey,* 170 N.J.Super. 491, 406 A.2d 1337 (Ch.Div.1979), the court identified the public policy reasons why the filing of a lis pendens should be privileged. "[T]he notice of Lis pendens exists ... for the proper administration of justice .... [and it] has no existence apart from a judicial proceeding since an action [brought in New Jersey] must be pending for the notice to be filed." *Id.* at 1340. The court explained that the underlying requirement that the privileged statements must be made in the course of the proceeding and have some relation thereto; moreover, the statement must be given a "liberal construction":

"[F]or otherwise the speaker or writer would have to decide the question of jurisdiction at his peril, and the sweep of the

privilege would be inhibited at the cost of the policy consid-erations which give it life." The relation to the proceeding "thus required is not a technical legal relevancy, such as would, necessarily, justify insertion of the matter in a pleading or its admission into evidence, but rather a general frame of reference and relationship to the subject matter of the action." There is no doubt that a notice of Lis pendens satisfies this requirement of the privilege. Under our Lis pendens statute ... a notice of Lis pendens Can be filed in any action affecting real estate. This written notice shall contain the title of the action, the general object of the action and the description of the real estate involved. *The notice is in effect a republication of some of [the] essential information contained in the complaint filed in the action.* Thus, since all of the information contained in the notice of Lis pendens directly relates to the action, this requirement of the privilege is met.

*Id.* at 1339 (emphasis added, citations omitted).

In *Albertson v. Raboff,* 46 Cal.2d 375, 295 P.2d 405 (Ca. 1956), the Supreme Court of California expanded the analysis, stating "[t]he publication of the pleadings is unquestionably clothed with absolute privilege, and we have concluded that the republication thereof by recording a notice of lis pendens is similarly privileged." *Id.* at 408; *see also Zamarello v. Yale,* 514 P.2d 228, 230 (Alaska 1973) (citing *Albertson*). Raboff brought an action against Albertson in which he sought a money judgment and either a lien on real property owned by Albertson or a judgment declaring that her title in the property was obtained by fraud to avoid creditors. Raboff also filed a lis pendens in conjunction with his action. At trial, although Raboff won a money judgment, the actions involving an interest in the property were resolved in Albertson's favor. In addressing Albertson's action for slander of title, the court found that a recorded notice of lis pendens was expressly authorized by statute. *Id.* at 408. Moreover, the court explained, "[i]t would be anomalous to hold that a litigant is privileged to make a publication necessary to bring an action but that he can be sued for defamation if he lets any one know that he has brought it, particularly when he is expressly authorized by statute to let all the world know that he has brought it." *Id.* at 409 (citation omitted); *accord Hansen v.*

*Kohler*, 550 P.2d 186 (Utah 1976), and *Houska v. Frederick*, 447 S.W.2d 514 (Mo.1969) (both quoting this proposition).

The Superior Court of New Jersey agreed. "It would be incongruous indeed to say that the complaint and notice of appeal are privileged but the notice of lis pendens filed in the same pending judicial proceeding, designed to give notice and preserve the status quo, would not also be privileged." *Lone v. Brown*, 199 N.J.Super. 420, 489 A.2d 1192, 1196 (App.Div. 1985).

> Again, the Supreme Court of California summarized:
>
> It is our opinion that the privilege applies to any publication, such as the recordation of a notice of lis pendens, that is required ... or permitted ... by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is invoked. ***Thus, it is not limited to the pleadings, the oral or written evidence, to publications in open court or in briefs or affidavits. If the publication has a reasonable relation to the action and is permitted by law, the absolute privilege attaches.*** It therefore attaches to the recordation of a notice of lis pendens, for such a publication is permitted by law, and like other documents that may be filed in an action, it has a reasonable relation thereto and it is immaterial that it is recorded with the County Recorder instead of being filed with the County Clerk.

*Albertson*, 295 P.2d at 409 (citations omitted).

██ In the case *sub judice*, it is undisputed that all of the litigants involved in this and its underlying declaratory judgment action had some ownership interest in the Park Lake Subdivision. In fact, the action is itself only between the various property owners within the subdivision. Restrictive covenants, by their very nature, clearly affect a property owner's ownership of their subject land. Here, Poole testified at length about the amendment to the covenants and the feared change to the neighborhood it will bring in the future. Thus, under the statutory authority alone, we find the filing of a lis pendens in this case was authorized. We note our Supreme Court inherently agrees with this holding in that it refused to dissolve the lis pendens before a full adjudication of the declaratory judgment action was completed.

Generally, in South Carolina, an unqualified privilege does not depend on the rigid requirement of a strictly legislative or judicial proceeding; its limits are fixed rather by considerations of public policy. *See Corbin v. Washington Fire & Marine Ins. Co.,* 278 F.Supp. 393 (D.S.C.1968) (stating this proposition after a brief review of privilege in South Carolina). *Corbin* involved an action for libel brought against a party to an arbitration proceeding for statements in a letter which were submitted to the board of arbitrators. The court, however, ultimately found these statements privileged, explaining if "arbitration is to be safely utilized as an effective means of resolving controversy, the absolute immunity attaching to its proceedings must extend beyond the arbitrators themselves; it must extend to all 'indispensable' proceedings, such as the receipt of evidence and argument thereon." *Id.* at 398. The Court continued: "The absolute privilege attaching to judicial proceedings embraces communications between counsel, statements made by counsel to a prospective witness, arguments or statements by counsel in course of proceeding, any statements made by witnesses in the course of proceedings, and even statements in the course of negotiation of a settlement." *Id.*

We find a lis pendens filed in conjunction with an action involving the same real estate is merely another form of pleading. It is premised upon and must be filed in time in conjunction with an underlying complaint involving an issue of property. *See South Carolina Nat'l Bank v. Cook,* 291 S.C. 530, 354 S.E.2d 562 (1987) (finding a complaint filed more than twenty days after the filing of the lis pendens renders the lis pendens invalid). In *Rodgers v. Wise,* 193 S.C. 5, 7 S.E.2d 517 (1940), the South Carolina Supreme Court found that an attorney's allegedly libelous and slanderous statements which were first dictated to his stenographer and then included in a letter sent to another attorney were absolutely privileged. *See id.* at 6–7, 7 S.E.2d at 517 ("If attorneys cannot freely and frankly discuss their client's business between themselves, by word of mouth when they are face to face, or by letter when separated, and thereby evaluate and determine the client's rights, then, it seems to me, that the rights of all clients before the Courts are seriously endangered and the administration of justice is handicapped.").

## V. Alternative Relief

Lastly, we are not unmindful of the fact that our holding above may limit the prosecution of actions for slander of title in South Carolina. However, it does not extinguish every form of relief when a party files a lis pendens which is motivated by some malicious intent. The jurisdictions are in agreement that the proper action against a maliciously filed lis pendens is under abuse of process or malicious prosecution. *See Sanders v. Rollinson,* 33 S.C. Law (2 Strob.) 447 (1848) (stating an action for slander based on a defamatory affidavit was a non-suit; the proper attack is under malicious prosecution); *Superior Constr. Inc. v. Linnerooth,* 103 N.M. 716, 712 P.2d 1378, 1382 (1986) ("[A]lthough slander of title may not provide a remedy to persons in the Linnerooths' position who have been wronged by a filing of a notice of lis pendens, such wrongful filing may support an action for abuse of process."); *Wendy's of South Jersey, Inc. v. Blanchard Mgmt. Corp. of New Jersey,* 170 N.J.Super. 491, 406 A.2d 1337, 1340 (Ch.Div. 1979) ("[T]here is authority to indicate that while one may not be able to recover damages for the filing of a notice of Lis pendens in a slander of title action, he may be able to recover the same in an action for malicious prosecution if the elements of that tort are satisfied."); *Albertson v. Raboff,* 46 Cal.2d 375, 295 P.2d 405 (1956) (reversing the decision below for further proceedings regarding an action for malicious prosecution; "a defendant cannot escape liability for a malicious prosecution of an unjustified charge by joining with it a justified charge."); *Brough v. Foley,* 572 A.2d 63 (R.I.1990) (although filing of lis pendens is not actionable under slander of title, the case is remanded for further proceedings regarding the parties alternative counterclaim for abuse-of-process.); *Houska v. Frederick,* 447 S.W.2d 514 (Mo.1969) (although no action for slander of title follows the filing of a lis pendens, the same elements, if presented to the court below and preserved, may prove a cause of action for malicious prosecution); *Palmer v. Shelby Plaza Motel, Inc.,* 443 So.2d 285 (Fla.Dist.Ct.App.1983) (although appellees were not entitled to damages for slander of title after successfully defending a mortgage foreclosure action, nothing precludes the appellees from filing a suit for malicious prosecution); *but see Askari v. R & R Land Co.,* 179 Cal.App.3d 1101, 225 Cal.Rptr. 285, 291 n. 3 (noting that, although the recording of a lis pendens, which is privileged,

cannot be the basis of an action for slander of title, but may, in some cases be the subject of an action for malicious prosecution, "no reported decision ... has upheld an award of damages for malicious prosecution for recording a notice of lis pendens.").

## CONCLUSION

We find the filing of a lis pendens is *ABSOLUTELY* privileged in South Carolina. The filing of a lis pendens enjoys the absolute privilege accorded to judicial proceedings. Because the recording of a lis pendens is specifically authorized by statute and has no existence separate and apart from the litigation of which it gives notice, the filing of a lis pendens *CANNOT* form the basis of an action for slander of title.

To hold otherwise would clearly endanger an untold number of transactions in this state that require the filing of a lis pendens for its intended purpose of providing notice to the world of a potential conflict involving the subject property.

For the foregoing reasons, the trial judge should have granted Poole's motion for directed verdict as to the cause of action for slander of title.

**REVERSED.**

CURETON and CONNOR, JJ., concur.