531 P.2d 139

Brian J. KELLY, Petitioner,

v.

The Hon. David J. PERRY, Maricopa County Superior Court Division 31, and Albert M. Coury, Sr. and Yvonne Coury, his wife, Bill Coury, Tony Coury, Jr. and Marie Coury, his wife, Tony Coury, Sr. and Carmen Coury, his wife, Al "Butch" Coury and Mary Coury, his wife, Coury Bros. Ranches, Inc., an Arizona corporation, Coury Enterprises, Inc., an Arizona corporation, and Riviera Properties, Inc., an Arizona corporation, the real parties in interest, Respondents.

No. 11789.

Supreme Court of Arizona,
In Banc.

Jan. 30, 1975.

Rehearing Denied March 4, 1975.

Goldstein, Mason, Bistrow & Ramras, Ltd. by Philip T. Goldstein, David N. Ramras, Phoenix, for petitioner.

Snell & Wilmer by James A. Honer, Phoenix, for respondents.

STRUCKMEYER, Vice Chief Justice.

By this special action, petitioner seeks to prohibit the Superior Court of Maricopa County from entering an order canceling a lis pendens. It was brought under Rule 2, Special Actions, Rules of Procedure, 17A A.R.S. Rule 2 provides in part:

"Any person who previously could institute an application for a writ of mandamus, prohibition, or certiorari may institute proceedings for a special action."

Prohibition lies where an inferior court is acting in excess of or without jurisdiction and injustice is apt to occur if the appellate court does not intervene. Charboneau v. Superior Court of Maricopa County, 101 Ariz. 586, 422 P.2d 702 (1967); Phoenix Newspapers, Inc. v. Superior Court of Maricopa County, 101 Ariz. 257, 418 P.2d 594 (1966). In order to determine whether a lower court has acted without jurisdiction, the Supreme Court will examine the external validity of the proceedings to determine whether the lower court had jurisdiction over the subject matter, the persons, and to render the particular judgment given. Caruso v. Superior Court of Pima County, 100 Ariz. 167, 412 P.2d 463 (1966).

In petitioner's first amended complaint, he alleges that a joint venture was formed with the individual defendants, the individual respondents here, to acquire, develop and sell a 70-acre parcel of real property. Petitioner does not assert that he has a contract with the corporate defendants, the actual owners of the property. He alleges that he expended his time and effort for two years pursuant to the contract but has not yet been compensated. He asks the court for an accounting and dissolution of the joint venture, together with disposition of the partnership assets in which he claims a 25% interest, and he also asks that a constructive trust be impressed on the 70 acres sufficient to reflect his alleged one-quarter interest in the asserted partnership assets. Petitioner also filed, pursuant to A.R.S. § 12–1191, a lis pendens describing the 70-acre parcel of real property. The court below thereafter granted a motion to quash the lis pendens, and this special action was brought to set aside the court's order.

Petitioner's prayer in his complaint to impose a constructive trust is for relief equitable in nature. Both at common law and in equity, the pendency of a suit affecting the title to real property was constructive notice thereof to all the world. Lis pendens statutes are designed to provide a better form of notice to one who may be interested in a particular piece of real property and who may be affected by the outcome of litigation in which the property is the subject matter of a suit.

"* * * long before the enactment of any statutory regulations on the subject, the mere pendency of a suit in equity affecting the title to real property was

held, both at common law and in equity, to constitute constructive notice thereof *to all the world, and the registry statutes, so far from creating the doctrine,* actually limited its application by making it effective only if the action were indexed in accordance with the statutory requirements. *In short, being a creature not of statute but of common law and equity jurisprudence, the doctrine of lis pendens is wholly subject to equitable principles."* Dice v. Bender, 383 Pa. 94, 97, 117 A.2d 725, 727 (1955). (Emphasis supplied)

Since A.R.S. § 12–1191(A) was adopted to provide an effective means of giving notice to parties interested in land and is not a restriction on the jurisdiction of the Superior Court, the Superior Court had the power to grant the relief sought in the motion to quash the lis pendens.

"The jurisdiction of a court of equity does not depend upon whether the court has or has not granted relief under similar circumstances, but upon the necessities of mankind and the correct principles of natural justice which are applicable alike to all conditions of society, all ages, and all people, and the courts should adapt their practice and course of proceeding to the existing state of society, and not, by too strict an adherence to forms, rules, and precedents, decline to administer justice." Grand I. B. of Locomotive Engrs. v. Mills, 43 Ariz. 379, 398, 31 P.2d 971, 978 (1934).

And since the Superior Court had the jurisdiction to determine respondents' motion, this special action to prohibit the Superior Court must be ordered quashed.

While the foregoing is sufficient to dispose of this case, two further matters are worthy of comment.

The instant case is the near-perfect example of why this Court has in the past refused to override the discretion of a lower court. It was aptly stated in Beefy King International, Inc. v. Veigle, 5 Cir., 464 F.2d 1102, 1104 (1972):

"The effect of a lis pendens on the owner of property, however, is constraining. For all practical purposes, it would be virtually impossible to sell or mortgage the property because the interest of a purchaser or mortgagee would be subject to the eventual outcome of the lawsuit."

Irreparable financial loss can be sustained by the corporate owners of the property and, of course, by their stockholders by the filing of the lis pendens. The 70 acres in question are in the process of development from raw land to dwelling and commercial property. The initial cost of the land was approximately $523,000.00. This was provided by respondents. Nor, so far as the record is concerned, has petitioner agreed to pay or paid any of the development costs. But by reason of the lis pendens, the ability to financially continue the development of the property is manifestly greatly impaired. The potential future loss to respondents while the case is slowly wending its way through the court system is disproportionately high when compared to the petitioner's claimed rights.

By contrast, petitioner has little to lose by filing a lis pendens. The filing of a notice of lis pendens is a part of a judicial proceeding and, as such, is privileged and will not sustain an action for slander of title. Stewart v. Fahey, 14 Ariz.App. 149, 481 P.2d 519 (1971). The financial losses incurred by reason of an unsuccessful venture will have to be absorbed by respondents. The trial judge obviously believed that it is inequitable not to annul the lis pendens.

This case is not analogous to Andrew Brown Company v. Painters Warehouse, Inc., 11 Ariz.App. 571, 466 P.2d 790 (1970). In that case, the lower court granted a motion to quash certain writs of garnishment in a proceeding which was not within the contemplation of the garnishment statutes. While the opinion held that the lower court was without jurisdiction to quash the writs of garnishment, the dis-

tinction controlling the disposition of the case was adequately recognized there:

"[1] We note at the outset that garnishment was unknown to the common law; it has come into being as a statutory remedy. [citations] Since garnishment is a creature of statute, garnishment proceedings are necessarily governed by the terms of those statutes. [citations] Thus, courts may not allow garnishment proceedings to follow any course other than that charted by the legislature. [citations]." 11 Ariz.App. at 572, 466 P.2d at 791.

 As stated, lis pendens is simply a statutory substitute for notice of a legal proceeding which affects the title to realty. It is fundamentally procedural because it provides a different, more adequate method of notice without conferring any additional substantive right. We do not consider that the two statutes are analogous.

The petition for special action is ordered quashed.

CAMERON, C. J., and LOCKWOOD, J., concur.

HAYS, Justice (dissenting):

I dissent. I am of the opinion that the trial judge exceeded his jurisdiction and abused his discretion in granting the defendants' motion to quash the lis pendens.

The statute with which we are concerned is ARS § 12–1191(A), which reads as follows:

"In an action affecting title to real property, plaintiff at the time of filing the complaint, or thereafter, and defendant at the time of filing his pleading when affirmative relief is claimed in such pleading, or thereafter, may file in the office of the recorder of the county in which the property is situated a notice of the pendency of the action or defense. The notice shall contain the names of the parties, the object of the action or affirmative defense, the relief demanded and a description of the property affected."

In this special action we are confronted with the question of whether the court under the foregoing statute can look beyond the allegations of the complaint in determining the validity of the lis pendens. Admittedly, there is nothing in the statute which authorizes or sets guidelines for a motion to quash lis pendens, nor have the Arizona courts previously spoken on this subject.

The crux of this matter seems to lie in the query: under the lis pendens statute, can the court be required to preliminarily examine the merits of an action in order to determine the validity of a lis pendens? Our answer to that query is no.

The respondents in oral argument and in their brief have disclosed the weakness in their position by suggesting that even if a motion to quash won't lie, perhaps a motion for summary judgment will. If respondents can get a summary judgment, they will have no trouble removing the lis pendens. This court, in the present posture of the case, is not the forum for that motion, however.

In specific answer to respondents' contentions, we adhere to the position taken by the Connecticut Supreme Court in Ravitch v. Stollman Poultry Farms, Inc., 162 Conn. 26, 291 A.2d 213 (1971). In that case the Supreme Court of Connecticut said:

"Here, the referee, in ordering the partial release of the lis pendens based on equitable considerations which are in contention in the action, has prematurely considered the merits of the action and the ability of the plaintiff to prevail in the action. In granting the motion the referee necessarily concluded that the plaintiff had no right to have a trust imposed on all the property subject to the outcome of the litigation. This was an adverse determination of an ultimate issue in the plaintiff's cause of action. The defendants have cited no case law or statute that gives the court power to decide such a matter on motion. . . ." 291 A.2d at 218.

The *Ravitch* case *supra* also cites Sachs v. Nussenbaum, 92 Conn. 682, 104 A. 393, saying:

"[W]e held that the power of the judge to dissolve an excessive attachment is limited by the language of the statute which allows such a dissolution only when the attachment is excessive, and, in ordering a dissolution, the judge had no power to test the legal sufficiency of the complaint or to weigh the chances for the plaintiff's recovery of his claim." [citations omitted]. 291 A. 2d at 218.

The only provisions for release of a lis pendens are found in ARS § 12–1191(C), which reads as follows:

"If a notice of pendency of action has been recorded pursuant to this section and the action is dismissed without prejudice for lack of prosecution, the plaintiff or plaintiffs of the action shall, within thirty days after such dismissal, issue to the defendant of the action a release of the notice of pendency of action. Such release shall be in the form of a recordable document. Failure to grant such release shall be subject to the penalties prescribed by § 33–712. As amended Laws 1974, Ch. 68, § 7."

We find nothing in the foregoing recently enacted amendment which supports the concept of a motion to quash lis pendens which inquires into the merits of the litigation. We would leave to the legislature the question of providing relief, if the provisions of its statutory lis pendens are too onerous. In the position taken by the majority, we find evidenced that often-criticized propensity of the courts to attempt to right all wrongs without regard to whether the responsibilities of other branches of government are being usurped. *See* Ariz. Const. art. 3.

We note that the foregoing position is consistent with our court of appeals' interpretation of the law as regards another statutory proceeding. There, the court in discussing the trial court's granting of a motion to quash writs of garnishment, said:

"Nowhere in the statutory scheme promulgated by our legislature to govern garnishment proceedings (A.R.S. Sec. 12–1571 *et seq.*) is there an express provision allowing a defendant to in any manner traverse or controvert the statements made by a garnisher in the affidavit required by A.R.S. Sections 12–1571 and 12–1573.

"Further, it does not appear that there is any statute from which can be inferred the defendants' right to controvert the plaintiff's garnishment affidavit. There are, in fact, contrary implications to be found in the statutory scheme. A. R.S. Sections 12–1571 and 12–1574 indicate that merely upon the plaintiff's making and filing the requisite affidavit the writ of garnishment 'shall' issue. In our opinion it is clear that the legislature intended that the writ issue upon the filing of the affidavit of garnishment rather than upon proving the truth of the allegations made therein. *Cf.* Arnold v. Knettle, 10 Ariz.App. 509, 460 P.2d 45 (1969)." Andrew Brown Co. v. Painters Warehouse, Inc., 11 Ariz.App. 571, 572–573, 466 P.2d 790, 791–792 (1970).

The majority makes much of the fact that lis pendens has early common law beginnings, but I am not impressed. It is now a statutory remedy enacted into law by our legislature, and I differ with my colleagues who call it fundamentally procedural. *Apparently from now on litigants can find relief from any of the burdens of statutory proceedings by going to the courts with a motion to quash.*

As a final word, I must point out that the issue of irreparable financial loss to respondents is very much in dispute, and I do not find the fact situation as sanguine as painted in the majority opinion. Even if the facts portrayed are true, I do not want to see another hard case make bad law.

A fact to be noted is that the lis pendens statute has been in effect in Arizona since

territorial days, § 1318, RS, 1901, and yet this is a case of first impression. Resort to the courts or the legislature on this point was not found necessary in times past.

The action of the trial court in granting the motion to quash the lis pendens was clearly without authority in law, and therefore, I dissent.

HOLOHAN, Justice.

I concur in the dissent.