Richard F. VILONE and Carmine
Crisconi, Jr., Plaintiffs,

v.

SEA & PINES CONSOLIDATION
CORP., a Delaware corporation, Mario
Capano, Joseph L. Capano and Louis J.
Capano, Jr., Defendants.

Civ. A. No. 8940.

Court of Chancery of Delaware,
New Castle County.

Submitted: Jan. 21, 1988.
Decided: Jan. 27, 1988.

David Roeberg and Frederick T. Haase, Jr. of Roeberg, Hasse & Associates, P.A., Wilmington, for plaintiffs.

George H. Seitz, III and Kevin G. Healy of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for defendants, Sea & Pines Consolidation Corp. and Louis J. Capano, Sr.

William D. Bailey, Jr. of Bayard, Handelman & Murdoch, P.A., Wilmington, for defendant Mario Capano.

Louis P. Agostini, Jr. of Agostini, Levitsky & Agostini, Wilmington, for defendant Joseph L. Capano.

OPINION

BERGER, Vice–Chancellor.

This action involves a dispute over plaintiffs' alleged interest in a land development project in Bethany Beach, Delaware. Plaintiffs, Richard F. Vilone and Carmine Crisconi, Jr., and the individual defendants, Mario Capano ("Mario"), Joseph L. Capano ("Joseph") and Louis J. Capano ("Louis") are all engaged in the business of real estate development. In 1985, Mario and Joseph were interested in acquiring several large parcels of undeveloped land located south of Indian River Inlet, Sussex County, Delaware for residential development. However, they had been unable to obtain flood insurance for the property and allegedly could not proceed unless the insurance could be obtained. Plaintiffs became involved in the project when, in the course of discussions with Mario and Joseph, they indicated that they could obtain the necessary insurance.

Mario and Joseph allegedly intended to acquire the property through Atlantic Coast Mortgage and Guaranty Co., Trustee for Sea & Pines Trust ("Atlantic"), a Delaware limited partnership. On March 28, 1986, plaintiffs and Atlantic allegedly entered into an agreement whereby plaintiffs were to receive $1 million and 50% of the ownership of Atlantic if they were able to obtain satisfactory insurance and if Atlantic purchased the land in question (the "Agreement"). Under the terms of the Agreement, plaintiffs agreed to assign

their shares of Atlantic to any lenders, if required by the lenders, and the partners were to distribute the profits made by the resale of the lots after all debts of Atlantic were paid in full.

Plaintiffs allegedly obtained a source of insurance coverage for Atlantic by June 11, 1986. However, plaintiffs claim that the individual defendants secretly attempted to obtain insurance for the project through plaintiffs' sources and later purchased the property through a corporation they incorporated, defendant Sea & Pines Consolidation Corp. ("Sea & Pines"). The complaint alleges that defendants prevented plaintiffs from completing the Agreement and that plaintiffs are entitled to the consideration promised them in that contract.

The relief sought in the complaint, among other things, includes a temporary restraining order and preliminary injunction restraining defendants from selling all or a portion of the project; a declaration that plaintiffs have an equitable lien in the project to secure the payment of $975,000 (representing the $1 million payment under the Agreement less $25,000 that was previously advanced); a declaration that defendants hold 50% of the project, subject to existing mortgage liens and plaintiffs' "equitable lien," as constructive trustees for plaintiffs; and an order requiring defendants to convey to plaintiffs a 50% undivided interest in the project.

Plaintiffs apparently contemplated legal proceedings as early as November, 1986, one month before Sea & Pines went to settlement on the property. However, the complaint was not filed until March, 1987 and, even then, plaintiffs did not pursue any interim injunctive relief*. Their counsel explained that they could not seek an injunction because they would not be in a position to provide what they anticipated would be a substantial bond if they were successful. Instead, on April 7, 1987, plaintiffs filed an affidavit in the Sussex County Recorder's Office for the purpose of giving notice that they had asserted

claims against the land involved in the project. In addition, they began filing suits against those who purchased lots from Sea & Pines and the lenders who provided financing for those purchases.

It is undisputed that, as a result of the lawsuits and the April affidavit, numerous purchasers are attempting to cancel their contracts and/or delay settlement until plaintiffs' claims are resolved. There are now 67 executed sales contracts pending settlement with a total value of close to $9 million. Plaintiffs concede that the project is being adversely affected by their claims and the lis pendens notice contained in the April affidavit.

The issue presently before the Court is whether defendants should be relieved of the cloud created by the lis pendens so that the subdivided parcels may be sold without delay and, if so, under what conditions. Defendants' application was styled a motion for temporary restraining order and for declaratory relief. However, the Court advised the parties that it would treat the application for a temporary restraining order as one for a preliminary injunction since the parties had time to develop the record and to brief the issues. At argument it became apparent that defendants view their motion as distinct from a preliminary injunction motion. Based upon authorities from other jurisdictions, defendants maintain that they are entitled to relief from the lis pendens without any showing as to their likelihood of success on the merits of plaintiffs' claims.

Defendants argue that they are entitled to relief either because plaintiffs have not stated a claim for relief that would give them an interest in defendants' land or because of the hardship that the lis pendens and other lawsuits imposes on them. On the question of plaintiffs' purported interest in the land, defendants point out that plaintiffs would have obtained no interest in the land if the Agreement upon which they rely had been carried out. Rather, they would have obtained a 50%

---

* Defendants raise a laches argument based on these delays. However, I find it unnecessary to consider the argument in light of my ruling.

interest in a partnership that was to acquire the land, subdivide it and resell the developed property. Under the Agreement, plaintiffs would have been entitled only to 50% of the profits from the sale of the developed lots and the $1 million payment at settlement. Since, by statute, a partnership interest is personal property and a partner has no interest in specific property of the partnership, defendants argue that the lis pendens doctrine cannot be invoked. 6 *Del.C.* § 17–701; *Holland v. Great Eastern, Inc.*, Del.Ch., Civil Action No. 683, Brown, V.C. (January 25, 1978). Even if this Court were to find that plaintiffs might have an equitable interest in the land, defendants argue that they are entitled to relief from the lis pendens where, as here, it is jeopardizing the project. *See Kelly v. Perry*, 111 Ariz. 382, 531 P.2d 139 (1975); *McCahill v. Roberts*, 421 Pa. 233, 219 A.2d 306 (1966); *White v. Wensauer*, Okl.Supr., 702 P.2d 15 (1985).

Plaintiffs acknowledge that the Agreement, had it been carried out, would not have given them a direct interest in the lands in question. However, they say that they are not seeking specific performance of the Agreement. Rather, they claim that Mario and Joseph breached their fiduciary duties to plaintiffs by acquiring and developing the land that was the subject of the agreement and excluding plaintiffs from the project. Under these circumstances, plaintiffs say they are entitled to a constructive trust on 50% of the land. *See Polk v. Schwartz*, App.Div., 166 N.J.Super. 292, 399 A.2d 1001 (1979); *Adams v. Jankouskas*, Del.Supr., 452 A.2d 148 (1982). Plaintiffs also acknowledge that the lis pendens is impairing the overall value of the project because the proceeds from the sales of individual lots are needed to pay off existing mortgages totaling more than $25 million. Yet they argue that the prevailing view in other jurisdictions is that a lis pendens may not be cancelled except upon statutory grounds. *See Ravitch v. Stollman Poultry Farms, Inc.*, 162 Conn. 26, 291 A.2d 213 (1971); *Polk v. Schwartz, supra.*

The question of whether plaintiffs' claim involves an interest in property is trouble-some. The complaint alleges that plaintiffs are "entitled to the consideration promised them in the Agreement" (¶ 20) and seeks, among other things, specific performance of the Agreement (Prayer for Relief, ¶ 5). However, in their brief and at oral argument, plaintiffs disavowed such a theory. Their position may be explained by the fact that the decision in *Hill v. L/A Management Corp.*, 234 Ga. 341, 216 S.E.2d 97 (1975) would defeat the lis pendens if plaintiffs were seeking enforcement of the Agreement.

In *Hill*, plaintiff sought damages and specific performance of an employment contract pursuant to which he was to receive certain payments and an equity interest in a limited partnership formed to develop real estate. Plaintiff filed a notice of lis pendens and defendants moved to cancel the lis pendens. The court held that plaintiff's suit did not involve real property within the meaning of the Georgia lis pendens statute because if plaintiff prevailed, he would receive an interest in a limited partnership which is personal property, not real property. The same reasoning applies with equal force to plaintiffs' claim for specific performance of the Agreement.

Apparently in an effort to avoid the impact of *Hill*, plaintiffs argue that what they are seeking is a constructive trust in the land. Their complaint does also seek that relief. Accordingly, I feel constrained to find that, for purposes of this motion, plaintiffs have claimed an interest in real property. I have some doubt as to whether this Court ultimately would find it appropriate to order that defendants convey to plaintiffs a 50% undivided interest in the property because under the Agreement they were only entitled to receive 50% of the profits from the development project. However, the complaint does allege that the individual defendants secretly obtained flood insurance through the same source that plaintiffs had located and secretly purchased the land through Sea & Pines rather than Atlantic. These allegations would appear to support a claim for a constructive trust. *See Adams v. Jankouskas, supra.*

■ Since I am unable, at present, to rule that the lis pendens must be cancelled because plaintiffs have claimed no interest in land, the question becomes whether the lis pendens may be cancelled based upon equitable considerations. This, apparently, is an issue of first impression in Delaware and, as noted above, the authorities from other jurisdictions are divided on this point. After consideration, I am satisfied that this Court of equity may, in appropriate circumstances, relieve a party from the harsh effect of the lis pendens doctrine and substitute an alternative means of protecting plaintiffs' interests.

Other jurisdictions have recognized that the lis pendens doctrine can cause irreparable injury and is subject to abuse. *See, e.g., Kelly v. Perry, supra; Brandstetter v. Kramer*, N.Y.Supr., 8 Misc. 2d 718, 168 N.Y.S.2d 114 (1957). Since lis pendens impairs the marketability of the subject land and the litigation may be prolonged, there is a prospect that, "unscrupulous plaintiffs [will misuse] the lis pendens procedure to force the settlement of groundless or malicious law suits." *McKnight v. Superior Court*, 170 Cal.App.3d 291, 215 Cal.Rptr. 909, 915 (1985). To avoid such an abuse the California statute, for example, provides for the expungement of the lis pendens if the action was not commenced and prosecuted for a proper purpose and in good faith. Code Civ.Proc., § 409.1. The New York statute, likewise, provides a mechanism for relief from a lis pendens where the affected party gives an undertaking in an amount fixed by the court. CPLR § 6515. Thus, although some jurisdictions have held that a lis pendens may not be cancelled on equitable grounds, those holdings were made in the context of statutory provisions governing lis pendens. The courts, either expressly or by necessary implication, were deferring to the state legislature's determination as to what protections were needed for the property owner. *See, e.g., Ravitch v. Stollman Poultry Farms, Inc., supra; Deerfield Bldg. Corp. v. Yorkstate Industries, Inc.*, N.Y.Supr., 77 Misc.2d 302, 353 N.Y.S.2d 331 (1974); *Hughes v. Houston Northwest Medical Center*, Tex.App., 647 S.W.2d 5

(1982); *Chapman v. L & N Grove, Inc.*, Fla.App., 244 So.2d 154 (1971).

■ Delaware, by contrast, has no statutes governing the operation and effect of lis pendens. That being the case, I find no basis on which to conclude that this Court's inherent equitable powers are or should be limited. As the Pennsylvania Supreme Court succinctly stated, "being a creature not of statute but of common law and equity jurisprudence, the doctrine of lis pendens is wholly subject to equitable principles." *Dice v. Bender*, 383 Pa. 94, 117 A.2d 725, 727 (1955). Applying equitable principles to the facts of this case, I conclude that defendants are entitled to relief from the operation of the lis pendens doctrine. The project is already being stalled because of plaintiffs' claims and it is reasonable to expect that the adverse impact of the lis pendens will become even more pronounced in the next few months when the season for these resort properties approaches. Moreover, it is apparent from the complaint that plaintiffs were not interested in acquiring any of the property at issue for their own use, but were engaging in a business venture for the development and sale of the property. Accordingly, a mechanism securing the proceeds from defendants' sales should provide plaintiffs with complete protection in the event that they succeed in their claims.

Based upon the foregoing, it is hereby ordered that plaintiffs are barred from commencing or prosecuting any actions against purchasers of the lands in question as well as their lenders, any person or entity insuring the title of any building lot, or any other person connected with the sale and purchase of the building lots based upon or arising out of their claims in this action during the pendency of this action. In addition, the affidavit filed by plaintiffs on April 7, 1987 in the Sussex County Recorder's Office shall be immediately stricken by action of plaintiffs or, failing such action by plaintiffs, by further order of this Court. As the condition to the effectiveness of this order, defendants shall place into an interest bearing escrow account the net proceeds of all sales of building lots

and all other sales of the property in question pending resolution of this case. For purposes of this order, net proceeds shall mean the proceeds after payment of (1) all existing liens on the properties in question placed by banks or other financial institutions as well as the lien of the original seller, Sea & Pines, Inc.; and (2) all normal settlement charges and costs except such portion of any real estate commission payable directly or indirectly to defendants through their realty company, Bethany Beach Realty, Inc.

IT IS SO ORDERED.

