IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

RICHARD HINDIN,                              )
                                             )
        Plaintiff/Counterclaim Defendant,    )
                                             )
    v.                                       )        C.A. No. 9272-ML
                                             )
EAGLEBANK, a Maryland Corporation,           )
                                             )
        Defendant/Counterclaim Plaintiff.    )


MASTER'S REPORT


Draft Report:  October 21, 2014
Exceptions Submitted:  December 24, 2014
Final Report:  March 23, 2015


John G. Harris, Esquire and David B. Anthony, Esquire, of BERGER HARRIS, LLP, Wilmington, Delaware; Attorneys for Plaintiff.

John C. Phillips, Jr., Esquire; Lisa C. McLaughlin, Esquire; and Stephen A. Spence, Esquire of PHILLIPS, GOLDMAN & SPENCE, P.A., Wilmington, Delaware; Attorneys for Defendant.


LEGROW, Master

The motion before the Court challenges a notice of pendency that the plaintiff filed in connection with a dispute between the parties regarding title to an ocean front property in Bethany Beach. That dispute culminated in the defendant recording a deed in lieu of foreclosure, which the plaintiff executed several months before and which transferred title in the property to the defendant. The plain terms of the parties' agreement, confirmed in a series of documents signed by the plaintiff over a number of years, show that the plaintiff defaulted on his obligations and the bank was entitled to record the deed. Because the plaintiff has not shown there is a probability that a final judgment will be entered in his favor on the claims challenging title to the property, I recommend that the Court grant the motion. This is my final report.

## I. BACKGROUND[1]

The plaintiff, Richard Hindin ("Hindin"), is a resident of the District of Columbia. Defendant EagleBank (the "Bank"), is a Maryland corporation based in Bethesda, Maryland. The Bank is the successor in interest to Fidelity & Trust Bank ("Fidelity").[2]

On January 11, 2005, Hindin entered into a loan agreement with Fidelity, evidenced by a Commercial Line of Credit Agreement & Disclosure (the "Credit Agreement"), under which Fidelity loaned Hindin $2 million for an initial two-year term.[3] As security for the loan, Hindin granted Fidelity a mortgage (the "Mortgage") on 15 Heather Lane, Bethany Beach, Delaware (the "Property").[4] The Mortgage was the

---

[1] The following facts are derived from the underlying complaint and the parties' papers filed in connection with the pending motion.

[2] Opening Br. in Supp. of EagleBank's Mot. to Cancel Notice of Pendency ("Def.'s Br.") at 2.

[3] Pl.'s Answering Br. in Opp'n to Def.'s Mot. to Cancel Notice of Pendency ("Pl.'s Answ. Br."), Ex. B.

[4] Pl.'s Answ. Br., Ex. C (hereinafter cited as the "Mortgage").

1

third lien recorded on the Property. The Bank became Fidelity's successor in interest to the Mortgage and the Credit Agreement on August 31, 2008.[5] The maturity date of the loan was extended several times.[6]

## A. The Bankruptcy Plan

On November 27, 2009, Hindin filed a petition in the Bankruptcy Court for the Eastern District of Virginia seeking relief under Chapter 11 of the Bankruptcy Code.[7] The bankruptcy court approved Hindin's proposed reorganization plan (the "Plan") on September 19, 2011.[8] Section 3.9 of the Plan governed Hindin's debt to the Bank. This section allowed Hindin to remain in possession of the Property, but required him to make monthly payments to the Bank until the principal and interest on the loan had been fully amortized and the balloon payment had been made.[9] Section 3.9 of the Plan also required Hindin to execute a deed in lieu of foreclosure to be held in escrow by the Bank.[10] Under the Plan, the Bank could release the deed from escrow if Hindin (1) elected to surrender the Property rather than meet the requirements of the Plan, or (2) defaulted on his

---

[5] Press Release, Eagle Bancorp, Inc., EagleBank and Fidelity & Trust Bank Merger Completed, Resulting in a $1.4 Billion Expanded Financial Services Organization (Sept. 2, 2008), *available at* https://www.eaglebankcorp.com/uploads/FT%20MergerComplete%20Release%209-2-08-FINAL.pdf.

[6] Beginning in 2007, the parties agreed to modify the terms of the Credit Agreement by extending the maturity date at various lengths and adjusting the interest rate margin. See Def.'s Br. at 2.

[7] *Id.* at 3.

[8] *Id.*

[9] *Id.*, Ex. D §3.9(b).

[10] 3.9(c) states "[t]o effectuate the terms of the treatment of Eagle Bank's Claim herein, the Debtor shall execute a Deed in Lieu, in form reasonably satisfactory to The Bank, no later than fifteen (15) days after the Effective Date, which shall be held in escrow by Eagle Bank's attorneys of record herein (or by such other party as the Debtor and The Bank may jointly agree upon), and which may be recorded by Eagle Bank only under the terms set forth herein."

payment obligations and failed to cure within 15 days of notice of that default.[11]  Hindin

delivered an executed deed in lieu of foreclosure to the Bank on January 9, 2012.[12]

Contemporaneous with the filing and approval of the Plan, Hindin and the Bank

agreed to extend the loan's maturity date until August 2012.[13]  Hindin acknowledges that

he defaulted under the Plan by failing to pay the balloon payment,[14] received notice of the

default, and failed to cure within 15 days, and that the Bank therefore had an immediate

right to record the deed in lieu of foreclosure.[15]

## B. The Forbearance Agreement and Deed in Lieu

At Hindin's request, the Bank agreed to forbear from exercising its right to record

the deed in lieu for a period of one year (the "Forbearance Period"), subject to the terms

of a forbearance agreement executed by the parties (the "Forbearance Agreement").[16]

The Forbearance Agreement was signed on September 26, 2012 and contains several

important terms that form the basis of the present dispute between the parties.

Recitals 10 and 11 memorialized the events that prompted the Forbearance

Agreement.  In recital 10, Hindin acknowledged that he failed to make payments due

under the Plan, failed to cure his default after notice, and that the Bank had the right to

---

[11] 3.9(d) states "… Eagle Bank may also, in its discretion record the Deed in Lieu if the Debtor (i) fails to make any payment due under the Eagle Bank loan documents to Eagle Bank and/or any other monthly payment or amount due to any other senior lien holder coming due at any time after the Effective Date but before the final Distribution Date; and (ii) also fails to cure such missed or late payments within fifteen (15) days after Eagle Bank has given written notice to the Debtor and his bankruptcy counsel of such missed payment."

[12] Def.'s Br., Ex. F (hereinafter cited as the "Forbearance Agreement"), at ¶R.9.

[13] *Id.,* Ex. E, dated September 13, 2011.

[14] *See Hindin v. EagleBank*, C.A. No. 9272-ML (TRANSCRIPT) (Oct. 21, 2014) (hereinafter "Oral Arg.") at 21-22; Aff. of Richard Hindin ¶ 11.

[15] Forbearance Agreement, at ¶ R.10.

[16] *Id*.

release the deed from escrow and record it.[17]  In recital 11, the Bank agreed to forbear from exercising these rights until September 26, 2013, provided the terms of the Forbearance Agreement were met.[18]

Additionally, Section 2(a) of the Forbearance Agreement contains various representations and warranties, including a second acknowledgment by Hindin that he was in default of his obligations under the Plan and that, if the Forbearance Agreement was not executed, the Bank had the right to release the deed from escrow and record it "immediately and without further notice or demand."[19]  Notably, Section 3(c) specified that the Forbearance Agreement was not a waiver of Hindin's defaults under the Plan.[20]

Under Section 3(a) of the Forbearance Agreement, the Bank agreed to forbear from exercising its rights for a period of one year, subject to the conditions set forth in Section 3(b).  Under Section 3(b), Mr. Hindin was responsible for certain payments to the Bank during the Forbearance Period.  Unlike the Plan, the Forbearance Agreement did not require the Bank to give Hindin notice and an opportunity to cure if he defaulted on his payment obligations.  Hindin also pledged to market the Property during the

---

[17] "Borrower subsequently failed to make all payments due under the Loan Documents to Lender, and also failed to cure such default within fifteen (15) days after Lender gave written notice to Borrower and his bankruptcy counsel of such default, and accordingly, pursuant to Section 3.9(d) of the Plan, Lender has the right to release the Deed in Lieu from escrow and record it among the Land Records of Sussex County, Delaware forthwith."

[18] The relevant portion of recital 11 states:  "Notwithstanding the foregoing, Borrower has requested that Lender forbear from exercising its right to record the Deed in Lieu as aforesaid, and otherwise to exercise any or all remedies available by law under the Existing Document (to the extent permitted under the Bankruptcy case), and Lender has agreed to do so, subject to the terms and conditions set forth in this Agreement."

[19] Forbearance Agreement §2 (a).

[20] *Id.* § 3(c).

Forbearance Period and, upon sale, to pay the Bank fifty percent of the net proceeds of the sale after satisfying the entire amount due under the Credit Agreement.[21]

Finally, as required by Section 4(d) of the Forbearance Agreement, Hindin executed an estoppel affidavit (the "Affidavit") and an updated deed in lieu of foreclosure.[22] The new deed in lieu of foreclosure (the "Deed in Lieu") and the Affidavit were executed and delivered on September 26, 2012.[23] In the Deed in Lieu, Hindin acknowledged that he was conveying "all right, title, and interest of the Grantor, including any equity or right of redemption" in the Property.[24] Additionally, in the Affidavit, Hindin swore under oath that: (1) he voluntarily executed the Deed in Lieu as an absolute conveyance of title to the Property and not as a mortgage or other security, (2) the conveyance was supported by valuable consideration, (3) he knew the purpose and effect of his acts, and (4) he had the opportunity to receive legal advice from counsel of his choosing before executing the document.[25]

During the Forbearance Period, Hindin marketed the Property in an attempt to sell it, but was unable to find a buyer. Hindin also satisfied the first and second liens on the Property during that period using proceeds of an insurance payment resulting from a fire

---

[21] *Id.* § 3(b)(iv).
[22] Def.'s Br., Ex. G (hereinafter cited as "2012 DIL").
[23] *Id.*
[24] *Id.*
[25] Def.'s Br., Ex. H (hereinafter cited as "Estoppel Affidavit") at ¶¶ 2, 4, 5, 6, 9.

that occurred on the Property in July 2012.[26] Hindin did not timely pay all the monthly payments and did not pay the balloon payment when the Forbearance Period expired.[27]

## C. The Deed in Lieu is Recorded

The Forbearance Period expired on September 26, 2013.[28] In October 2013, the Bank notified Hindin of its intent to record the Deed in Lieu.[29] Shortly thereafter, Hindin informed the Bank he had arranged funding to pay off the loan in full, based on a payoff figure in a statement that recently had been provided to him by the Bank.[30] Shortly thereafter, the Bank demanded $2.325 million, approximately $275,000 more than the amount Hindin was prepared to tender.[31] The Bank recorded the Deed in Lieu in early December 2013.[32]

Hindin initiated this action on January 23, 2014 with a complaint alleging counts for breach of contract, breach of the implied covenant of good faith and fair dealing, declaratory judgment, and cancellation of the Deed in Lieu. The following day, Hindin filed a Notice of Pendency of Action against the Property with the Sussex County Recorder of Deeds. The Bank filed an answer and counterclaim on March 19, 2014 and its Motion to Cancel Notice of Pendency (the "Motion to Cancel") on June 24, 2014. Oral argument was held on October 21, 2014, after which I issued a draft report from the

---

[26] Def.'s Br. at 6.
[27] Hindin contends that the Bank assured him the Forbearance Period would be extended because the Bank did not want to repossess the Property and undertake the obligation to sell it. *See* Pl.'s Opening Br. in Supp. of his Exceptions to the Master's Draft Report ("Pl.'s Exceptions") at 8.
[28] *Id*. at 4; Forbearance Agreement §2(a).
[29] Def.'s Br. at 7, Ex. I.
[30] *Id*.
[31] *Id*. at 7.
[32] *Id*. at 8.

bench recommending that the Court grant the Motion to Cancel. Hindin filed exceptions to the draft report and the parties briefed those exceptions. This is my final report on the Motion to Cancel.

## II. ANALYSIS

### A. Governing Standard

The doctrine of *lis pendens*, which in Latin literally translates to "a pending lawsuit," is an equitable principle that puts potential buyers of real property on constructive notice that a dispute before the court may affect title to the property.[33] The doctrine does not establish an actual lien, but merely serves as notice to third parties that any interest they may acquire in the Property during the pendency period is subject to the result in the litigation.[34] The common law doctrine of *lis pendens* was replaced by statute in 1989.[35] The statute added various requirements regarding filing, recording, and serving a notice of pendency, but the equitable principles largely remain the same.[36]

Under 25 *Del. C.* § 1608, the Court may cancel a notice of pendency at its discretion if it "determines that there is not a probability that a final judgment will be entered in favor of the party recording the notice of pendency." The party recording the notice of pendency bears the burden of establishing such probability. Hindin and the Bank disagree as to the governing standard this statutory language creates. Hindin, citing *Robert J. Smith Companies, Inc. v. Bark*,[37] argues that this Court should apply a

---

[33] *See DiSabatino v. Salicete*, 695 A.2d 1118, 1119 (Del. 1997).
[34] *See id*.
[35] 25 *Del. C.* § 1614.
[36] *DiSabatino*, 695 A.2d at 1120.
[37] 1997 WL 294442 (Del. Ch. May 28, 1997).

deferential pleadings-based standard of review and only should cancel the Notice of Pendency if "the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances."[38] The Bank, on the other hand, relies on *Providence Creek Academy Charter Sch., Inc. v. St. Joseph's at Providence Creek*[39] and argues that the proper standard of review is more akin to the standard applied on motion for a preliminary injunction: whether the plaintiff can demonstrate a probability of success on the merits.

In my view, the Bank's interpretation of the governing standard is consistent with both the statutory language and this Court's precedent. The reference in Section 1608 to "probability" cannot be squared with Delaware's "conceivability" pleadings standard. Consistent with that conclusion, the Court in *Providence Creek* required the plaintiff to demonstrate a probability of success on the merits of its claim to the property and ultimately concluded the notice of pendency should be cancelled because the plaintiff could not meet that burden.[40] This Court applied the same standard in *Pierce v. Laws*.[41] In contrast, in *Robert J. Smith Companies*, on which Hindin relies, the Court applied a pleadings-based standard because the parties had failed meaningfully to develop the record beyond the allegations contained in the complaint.[42]

---

[38] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011).
[39] 2006 WL 318628, at *1 (Del. Ch. Jan. 30, 2006). *See also River Enterprises, LLC v. Tamari Properties, LLC*, 2005 WL356823 at *2 (Del. Ch. Feb. 15, 2005) (applying a probability of success on the merits standard of review).
[40] *Id.*
[41] 2003 WL 23021937, at *1 (Del. Ch. Dec. 5, 2003).
[42] 1997 WL 294442, at *2-3 (Del. Ch. May 28, 1997).

8

There are two counts in the complaint that are relevant to this Court's analysis of whether the notice of pendency should be cancelled:[43] (1) Hindin's request for a declaratory judgment that the Deed in Lieu unlawfully was recorded,[44] and (2) Hindin's application for cancellation of the Deed in Lieu because it unlawfully was recorded.[45] Hindin raises the same arguments in support of each count, namely that the Bank was not permitted to record the Deed in Lieu because (1) the Forbearance Agreement expired with the Forbearance Period, at which point the parties' rights were governed by the Plan and the Bank was precluded from recording the Deed in Lieu without giving Hindin notice and an opportunity to cure, or (2) Hindin tendered full payment before the Deed in Lieu was released from escrow and did not waive his right to redeem the Property. In this case, the documents that govern the claims are unambiguous and indicate there is no probability of success on the merits on either of these counts.

Ambiguity does not exist simply because parties disagree on the meaning of a term in a contract.[46] Contracts are ambiguous only "when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings."[47] In this case, Hindin does not contend that the terms of the agreement are ambiguous, but rather that the parties' subjective intent must be examined as a means to vary or interpret the agreement. Such an exercise is not proper, however,

---

[43] Although there are four counts alleged in the complaint, the parties agree that the counts for breach of contract and breach of the covenant of good faith and fair dealing are not relevant to an analysis of whether to cancel a motion for pendency because those counts seek monetary damages and cannot serve as the basis for a notice of *lis pendens*. *See* 25 *Del. C.* § 1601(b)(1).

[44] Verified Compl. ¶¶ 52-57.

[45] *Id*. at ¶¶ 58-62.

[46] *Nw. Nat'l Ins. Co. v. Esmarck, Inc*., 672 A.2d 41, 43 (Del. 1996).

[47] *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co*., 616 A.2d 1192, 1196 (Del. 1992).

9

when the meaning of the contract is clear from its terms.[48] As explained below, under the Forbearance Agreement the Bank unambiguously had the right to record the Deed in Lieu at the end of the Forbearance Period. Therefore, Hindin has not shown a probability that he will succeed on the merits of his claims. Finally, even under the lower pleadings-based standard the plaintiff contends applies, the notice of pendency still should be cancelled. As previously mentioned, the documents unambiguously provided the Bank with the immediate right to record the Deed in Lieu,[49] rendering Hindin unable to succeed under any reasonably conceivable set of circumstances.

**B. The Forbearance Agreement did not expire.**

Hindin first argues that the Deed in Lieu improperly was recorded because the Forbearance Agreement expired when the Forbearance Period expired, and the Plan governed instead.[50] Hindin's argument finds no textual support in the Forbearance Agreement, which contains no language regarding expiration of the agreement. Hindin, however, argues that the Bank must have intended that the Forbearance Agreement would expire because it specifically excluded survival language from all sections of the Forbearance Agreement except subsection 3(b)(iv), which states:

> Borrower shall pay to Lender, as a fee for Lender's granting the requested forbearance, upon (and only upon) any sale of the Property, fifty percent (50%) of the net proceeds of such sale, after Borrower shall have fully paid and satisfied all indebtedness under the Credit Agreement and Mortgage, and after Borrower shall have paid all other costs of closing on such sale. This requirement shall survive the expiration of the Forbearance Period.[51]

---

[48] *See e.g., Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997).
[49] Forbearance Agreement, at ¶ R.10.
[50] Pl.'s Exceptions at 15.
[51] Forbearance Agreement §3(b)(iv).

Hindin argues that under the rule of *expressio unius est exclusion alteris*,[52] because the final sentence of this subsection is the only language in the agreement that addressed what happened after the expiration of the Forbearance Period, the Bank, which drafted the agreement, intended the remaining provisions of the Forbearance Agreement to expire when the Forbearance Period ended.[53] Consequently, Plaintiff contends, when the Forbearance Period ended, the Plan governed the parties' obligations and the Bank was required to give Hindin notice and a 15 day period to cure the default before releasing the Deed in Lieu from escrow.[54] I disagree.

The Bank's agreement to forbear from recording the Deed in Lieu for a period of one year does not mean that the entire agreement was nullified once the Forbearance Period ended. That the Forbearance Agreement does not contain a survival clause does not support a conclusion that the parties intended it to expire. To the contrary, the only fair reading of the parties' agreement is that they intended one of two things to happen when the Forbearance Period expired: either Hindin's obligation to the Bank would be satisfied by the balloon payment, or the Bank would record the deed.

---

[52] *Cf.* Arthur L. Corbin, 3 *Corbin on Contracts* § 552 at 206 (1960) (explaining that under the rule of *expressio unius est exclusio alteris,* "If one subject is specifically named, or if several subjects of a larger class are specifically enumerated, and there are no general words to show that other subjects of that class are included, it may reasonably be inferred that the subjects not specifically named were intended to be excluded").

[53] Pl.'s Exceptions at 15.

[54] *Id*. at 16-17.

11

Hindin's reliance on Section 3(b)(iv) is not well-founded, particularly when that clause is read in context.[55] The section of the agreement Plaintiff cites refers to the expiration of the Forbearance *Period* not the Forbearance *Agreement*. The provision cited is part of Section 3(b), which states the conditions upon which the Bank agreed to forbear from exercising its right to record the Deed in Lieu. Section 3(b)(i) called for payments of specific amounts on certain dates. Subsection 3(b)(ii) required Hindin to continue to make regular interest payments during the Forbearance Period. Subsection 3(b)(iii) required Mr. Hindin to comply with all of his obligations under the Mortgage. Examining this section as a whole, it is clear that the purpose of the survival clause in Section 3(b)(iv) was to clarify that the Bank's right to share in the sale proceeds survives beyond the expiration of the Forbearance Period, despite its inclusion in a subsection describing Hindin's obligations during the Forbearance Period. In addition, that language clarified that the Bank's right to share in the sale proceeds continued even if the Property was not sold in the Forbearance Period. That sole subsection, which does not refer to expiration of the parties' agreement, is not a sufficient basis to conclude that the agreement expired with the Forbearance Period.

## C. Even if the parties' conduct is governed by the Plan, the Bank had the right to record the Deed in Lieu.

Even if I could conclude that the Forbearance Agreement is ambiguous and there is a probability Hindin can show that it expired, the Bank still had the immediate right to

---

[55] *Stonewall Ins. Co. v. E.I. du Pont de Nemours & Co.*, 996 A.2d 1254, 1260 (Del. 2010) (rules of statutory construction require a single clause or paragraph of a contract to be read in context rather than in isolation).

record the Deed in Lieu under the Plan. Hindin repeatedly acknowledged in the Forbearance Agreement his default under the Plan and the Bank's right to record the Deed in Lieu under the terms of the Plan.

For example, recital 10 of the agreement states that Mr. Hindin defaulted under the Plan and failed to cure within fifteen days of receiving notice of default.[56] Therefore, even if the Plan governed the parties' conduct upon expiration of the Forbearance Period, Hindin previously acknowledged the Bank's right to record the Deed in Lieu under the Plan. Although Hindin contends he "cured" the default by bringing the interest payments current at the beginning of the Forbearance Period, the plain language of the Forbearance Agreement compels the opposite conclusion.[57] Section 3(c) of the Forbearance Agreement specifically provides:

> Forbearance Not a Waiver: Neither this Agreement nor the fact of Lender's present forbearance is, or shall be construed as, a waiver of any of Borrower's defaults under the Loan, or of any of Lender's rights and remedies under the Loan Documents and any prior notices provided to Borrower, and under applicable law. All such rights and remedies are reserved.

The only reasonable reading of this language in the Forbearance Agreement is that the Bank agreed to forbear on its existing right to record the Deed in Lieu, without waiving

---

[56] Forbearance Agreement ¶ R. 10:
    Borrower subsequently failed to make all payments due under the Loan Documents to Lender, and also failed to cure such default within fifteen (15) days after Lender gave written notice to Borrower and his bankruptcy counsel of such default, and accordingly, pursuant to Section 3.9(d) of the Plan, Lender has the right to release the Deed in Lieu from escrow and record it among the Land Records of Sussex County, Delaware, forthwith.
[57] It is not clear how bringing the interest payments current could "cure" Hindin's failure to make the balloon payment.

its right to do so when the Forbearance Period expired. Nothing in the Forbearance Agreement can be read as "curing" Hindin's default under the Plan.

### D. Plaintiff waived his right of redemption.

Finally, Hindin argues that the Bank did not have the right to record the Deed in Lieu because he exercised his right of redemption when he tendered full payment for the entire debt owed to the bank. He argues that any waiver to which he might have agreed in the Deed in Lieu was not intended to take effect until the Deed in Lieu was recorded, and the Deed in Lieu was not recorded until after Hindin tendered payment.

Mr. Hindin's waiver of his redemption right was effective upon the execution and delivery of the Deed in Lieu. The plain language of the Deed in Lieu states that it is an "*absolute* conveyance of all right, title and interest … including any equity or right of redemption."[58] There is nothing ambiguous in this term of the Deed in Lieu and Hindin offers no precedent to support his position that his waiver was not effective until the deed was recorded. It is settled law that a deed takes effect when it is delivered, not when it is recorded.[59] Because the Deed in Lieu was fully executed and delivered to the Bank and unambiguously stated there was no right of redemption, Hindin could not redeem the Property after he defaulted under the Forbearance Agreement.

Plaintiff also tries to manufacture a factual issue by contending that the waiver in the Deed in Lieu was not knowing and voluntary. Again, however, Hindin does not state that the terms of the Deed in Lieu are ambiguous. Instead, he argues that he

---

[58] 2012 DIL (emphasis added).
[59] *See e.g., Hitchens v. Ellingsworth*, 94 A. 903, 904 (Del. Super. 1915).

misunderstood the relation of the Forbearance Agreement to the Plan. As explained above, however, a term is not rendered ambiguous simply because the parties disagree about its construction.[60] Rather, an ambiguity exists "[w]hen the provisions in controversy are fairly susceptible of different interpretations or may have two or more different meanings."[61] Moreover, the fact that Hindin misunderstood the effect of the Forbearance Agreement does not mean he misunderstood the terms of the waiver.

Hindin's argument about whether his waiver was knowing and voluntary also contradicts the terms of the agreements he signed. Hindin swore under oath in the Affidavit that the Deed in Lieu transaction "was made at the request of [Hindin] as his free and voluntary act."[62] The Affidavit states that Hindin was not "acting under any misapprehension as to the effect of such acts, nor under any duress, undue influence, or misrepresentation by [the Bank]," and had "been afforded the opportunity to be represented by legal counsel of [Hindin's] choosing."[63] Therefore, Hindin has not shown there is any probability of success in demonstrating that the waiver of his redemption right was not effective.

### E. The balance of the equities does not weigh in Mr. Hindin's favor.

Alternatively, Hindin argues that even if he cannot establish a probability of success on the merits, the Court should exercise its discretion under Section 1608 to deny the motion "based on the equities." He argues that discovery is necessary to reveal the parties' subjective intent in entering into the Forbearance Agreement, and furthermore,

---

[60] *Nw Nat'l Ins. Co. v. Esmark, Inc.*, 672 A.2d 41, 43 (Del. 1996).
[61] *GMC Capital Invs., LLC v. Athenian Venture Partners I, LP*, 36 A.3d 776, 780 (Del. 2012).
[62] Estoppel Affidavit at ¶ 5.
[63] *Id*. at ¶ 9.

that the Bank would not be prejudiced by "maintaining the status quo" during discovery. I find these arguments unpersuasive.

In this case, the equities do not balance in Mr. Hindin's favor. As previously stated, the language of the contract clearly and unambiguously gave the Bank the right to record the deed. It is a settled principle of contract law that when a contract is unambiguous, extrinsic evidence may not be used to interpret the intent of the parties.[64] Therefore, the subjective intent of the parties is wholly irrelevant and discovery on the issue is not necessary before the Court resolves the Motion to Cancel. Hindin's argument also ignores the indisputable damage a notice of pendency carries. Non-meritorious notices can cause substantial irreparable harm by impairing the marketability of the disputed property.[65] This potential for abuse was one of the driving forces behind the decision of the General Assembly to enact a statute specifying the conditions necessary to maintain a notice of pendency.[66] To maintain a meritless notice of pendency would require the Bank to continue to bear the cost and risk associated with holding the Property for an indefinite period of time.

---

[64] *See e.g., Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997).

[65] *See DiSabatino v. Salicete*, 695 A.2d 1118, 1119-20 (Del. 1997) (citing *Vilone Sea & Pines Consol. Corp.*, 541 A.2d 135 (Del. Ch. 1988) (*rev'd on other grounds*)).

[66] *See e.g., id.* at 1120 ("[The statute] was intended to codify in clear terms the protections to be afforded to real property owners against unscrupulous plaintiffs, who might misuse the *lis pendens* doctrine and cause irreparable harm to legitimate titleholders").

**Conclusion**

For the foregoing reasons, I recommend that the Court grant the Defendant's motion to cancel the notice of pendency. This is my final report and exceptions may be taken in accordance with Court of Chancery Rule 144.


/s/ *Abigail M. LeGrow*
Master in Chancery