RENDERED: FEBRUARY 26, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1847-MR

DAN GIBSON 								APPELLANT

v.
APPEAL FROM PULASKI CIRCUIT COURT
HONORABLE JEFFREY T. BURDETTE, JUDGE
ACTION NO. 17-CI-00434

RON JONES, INDIVIDUALLY; TARA
INCORPORATED, A KENTUCKY
CORPORATION; FORD BROTHERS,
INC.; AND MATT FORD 						APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, KRAMER, AND MAZE, JUDGES.

CALDWELL, JUDGE: This matter arises out of a boundary dispute. Having

reviewed the record, the orders of the trial court, and the briefs of the parties, we

affirm.

# FACTS

In 1988, Appellant Dan Gibson (Gibson) purchased a parcel of real property in Pulaski County. That same year, Appellee Ron Jones (Jones) purchased an adjoining parcel of land. While Gibson used the property he had purchased to graze livestock and grow ginseng, Jones eventually subdivided his parcel and planned a housing development he named the Scarlett's Way Addition of the Tara Subdivision.[1] Deeds reflecting the ownership of both parties, as well as the subdivision of Jones' parcel, were duly recorded in the Pulaski County Clerk's Office.

In the Spring of 2017, Jones engaged Appellee Ford Brothers, Inc. (Ford Brothers), an auctioneer, to conduct an online auction of several parcels of the Scarlett's Way Addition of the Tara Subdivision. Several of these parcels abutted the property owned by Gibson.

Soon thereafter, Gibson noticed signage advertising the auction and believed the sign was placed upon his property. Gibson phoned Ford Brothers and informed it that he believed that it was planning on auctioning property to which

---

[1]Appellee Ron Jones and his wife Emma were granted the deed, along with another couple, in April of 1988, and deeded it in that same month to Appellee Tara, Incorporated, a duly organized corporation formed by the Joneses and their partners, that same couple who granted the deed to Tara, Incorporated, in 1988.

its client had no proper claim. After Ford Brothers took no action in response to his phone call, Gibson and his wife went to the office of Ford Brothers.

The encounter at the auction company was unfriendly and did not act to ameliorate the situation. Rather, Gibson took the action of filing a "deed of correction," which he drafted *pro se*, and in which he was both Grantor and Grantee, in an attempt to "clarify" his belief about the accurate location of the boundary between his property and the property owned by Jones and Tara, Incorporated. This deed contained a different property description than the deed he obtained in 1988. He had no survey conducted before drafting the new deed.

When the filing of the "deed of correction" did not result in a ceasing of the auction, Gibson filed suit. In the suit filed in May of 2017, he named as Defendants not only Jones and Tara, Incorporated, but also Ford Brothers and Matt Ford, individually, ostensibly because Matt Ford was the listing auctioneer.[2] Jones and Tara, Incorporated answered and counterclaimed for title to the disputed land to be quieted in their favor, and they requested damages for slander of title, loss of quiet enjoyment, negligence, and nuisance, punitive damages, and costs. Ford

---

[2] Appellant, while acting *pro se*, named Ron Jones and Tara, Incorporated, along with Ford Brothers, Inc. and Matt Ford as Defendants in his initial Complaint. However, the property at issue was deeded to and held by Tara, Incorporated by Ron Jones, along with his wife and the couple mentioned above, the Warrens. The Court is unaware why Ron Jones was named a party herein given that Tara, Incorporated, owned the property involved in the dispute. Regardless, none of the parties ever raised this issue, and we decline to do so at this juncture.

Brothers and Matt Ford answered and denied all allegations made by Gibson. As a result of the filing of the suit, the auction was cancelled.

In August of 2017, the trial court dismissed the claims against Ford Brothers and Matt Ford, finding that to hold an auction company or its listing agent liable when there is a dispute of title to property which they have been engaged to sell would have a chilling effect on the auction industry, and thus there was no support in the law for such liability. The suit continued against Jones and Tara, Incorporated, and the trial court ordered the parties to mediation.

Counsel for Jones and Tara, Incorporated notified the court that the parties had selected a mediator. However, despite counsel for Jones having scheduled a date and time with the mediator, Gibson refused to agree to the scheduled date and the parties thereafter never submitted to mediation. After cross motions for contempt and the unrelated recusal of the first presiding judge, discovery continued. The newly assigned judge held the cross motions for contempt in abeyance and set aside the prior mediation order, citing its futility.

In the Fall of 2018, Jones and Tara, Incorporated moved for partial summary judgment, seeking dismissal of Gibson's claims. A hearing was held on September 21, 2018, at which counsel for Gibson appeared for the first time, Gibson having proceeded *pro se* to that point. Counsel for Gibson had not filed an entry of appearance prior to the hearing and did not request leave to file a written

response, but rather placed arguments against the motion on the record at the hearing.

A few days after the hearing, the trial court issued written findings granting the motion. The court ruled that Gibson had provided no cognizable evidence of any valid claim that the property boundary existed anywhere other than where the deed Jones and Tara, Incorporated had provided indicated, and where the survey which they had conducted indicated the boundary lay. The trial court was wholly unpersuaded by Gibson's self-serving "deed of correction" and declared it "wholly invalid."

The trial court also noted that by feeling it necessary to file the "deed of correction" with a property description more expansive than the description in the original deed obtained by him in 1988, Gibson was admitting that the original deed did not describe the property in a way which supported his claim. The court's order also quieted title in the disputed portion of land in favor of Jones and Tara, Incorporated. After the Order was issued, counsel for Gibson attempted to file an untimely response, and then later a motion seeking CR[3] 60.02 relief from the entry of the partial summary judgment. The trial court denied the response as untimely and denied CR 60.02 relief. Gibson then attempted to appeal the entry of partial

---

[3] Kentucky Rules of Civil Procedure.

summary judgment, but that action was dismissed after this Court determined the order was not final and appealable.[4]

The following spring, Jones and Tara, Incorporated, filed a motion seeking summary judgment in their favor on their counterclaims. That motion was granted by the trial court, and the court found that Jones and Tara, Incorporated were entitled to judgment for slander of title, negligence, nuisance, and loss of use and quiet enjoyment, as well as punitive damages.

Oral arguments were held by the trial court on the amount of damages in August of 2019, and the trial court issued findings of fact and conclusions of law awarding damages to Jones and Tara, Incorporated against Gibson totaling $62,654.02.[5] This appeal followed.

## STANDARD OF REVIEW ON A MOTION TO DISMISS

Appellate courts employ a *de novo* standard of review when determining whether a motion to dismiss was properly granted or denied.

> A motion to dismiss is governed by a rigorous and
> sweeping standard which dictates that it should be
> granted only where "it appears the pleading party would

---

[4] No. 2017-CA-1471-MR.

[5] It does appear that there is a mathematical error in the computation of damages in the Judgment. The Judgment states that the amount of damages suffered due to slander of title, nuisance, and loss of use and quiet enjoyment totals $44,750.00. Additionally, the Judgment held that the total punitive damages were $14,904.02 in attorney's fees and costs. The Judgment purports to grant a total judgment of $62,654.02, but the total of those two figures is only $59,654.02. The $3,000.00 discrepancy is not accounted for in the judgment, but will be addressed *infra*.

not be entitled to relief under any set of facts which could be proved in support of his claim." *Pari-Mutuel Clerks' Union v. Kentucky Jockey Club*, 551 S.W.2d 801 (Ky. 1977). When considering the motion, the allegations contained in the pleading are to be treated as true and must be construed in a light most favorable to the pleading party. *See Gall v. Scroggy*, 725 S.W.2d 867 (Ky. App. 1987). The test is whether the pleading sets forth **any** set of facts which—if proven—would entitle the party to relief. If so, the pleading is sufficient to state a claim. *See* CR 8.01. Since the trial court is not required to make factual findings, the determination is purely a matter of law. *James v. Wilson*, 95 S.W.3d 875 (Ky. App. 2002). Consequently, we review the decision of the trial court *de novo. Revenue Cabinet v. Hubbard*, 37 S.W.3d 717 (Ky. 2000).

*Mitchell v. Coldstream Labs., Inc.*, 337 S.W.3d 642, 644-45 (Ky. App. 2010).

## ANALYSIS

### *Dismissal of Ford Brothers, Inc. and Matt Ford*

The trial court granted the motion of Ford Brothers and Matt Ford, (the Fords), the auction company and listing auctioneer, to dismiss them from the action as they were simply agents of Jones and Tara, Incorporated and had no liability to Gibson in his property line dispute with their clients. In so doing, the trial court held that although Gibson had alleged the claim of trespass under KRS[6] 381.230 against each of the named defendants, including the Fords, such claim was

---

[6] Kentucky Revised Statutes.

not well taken, and Gibson could not prove any set of facts which would entitle him to relief on such grounds as to the Fords.

The trial court explained that an action for trespass is only maintainable in circumstances wherein a named defendant is either engaged in hazardous activity which harmed the plaintiff's property, where a trespass was intentionally committed, or where a trespass was negligently committed, and it held that no facts had been pled which would establish such violation by the Fords. *See Rockwell Int'l Corp. v. Wilhite*, 143 S.W.3d 604, 619 (Ky. App. 2003). Further, the court pointed to the axiomatic rule of agency, *i.e.*, that an agent is not liable for the lawful acts conducted on behalf of a disclosed principal. "[T]he law generally protects an agent from liability for lawful acts done within the scope of his agency on behalf of a disclosed principal." *Am. Collectors Exch., Inc. v. Kentucky State Democratic Cent. Exec. Comm'n*, 566 S.W.2d 759, 761 (Ky. App. 1978). In other words, Gibson had no cognizable action against the Fords as agents for Jones and Tara, Incorporated, as they were not liable to him even if their principals had been incorrect about the location of the property line. Finally, the trial court stated that a strong policy reason for such agency theory existed in that if an auction company could be so liable, conferring such liability would have a chilling effect on the operation of auction companies in the Commonwealth.

Gibson also argues on appeal that the Fords violated KRS 330.220(3).[7]  That statute regulates the conducting of "absolute" auctions of property wherein there is a legitimate lien or encumbrance by a party who has not engaged the auction company or assented to the listing of the property for auction. We hold that neither Mr. Gibson's telephone call nor his appearing at the Fords' place of business to lodge his objection to the auction satisfies the "lien or encumbrance" language of the statute.  Further, when Gibson did file suit, the Fords halted the auction, even though in the strict language of the statute, a bare assertion of ownership contained in a complaint does not rise to the level of "lien or encumbrance."

---

[7]  (3) No auction shall be advertised as "absolute" nor shall any advertising contain the words "absolute auction" or the word "absolute" or words with similar meaning nor shall any licensee offer or sell any real or personal property at absolute auction unless:

(a) There are no liens or encumbrances on the real or personal property, except property tax obligations, easements, or restrictions of record, in favor of any person, firm, or corporation other than the seller, or unless each and every holder of each and every lien and encumbrance, by execution of the auction listing contract, or otherwise furnishing to the auctioneer written evidence of a binding commitment therefor, shall have agreed to the unqualified acceptance of the highest bid for the property, without regard to the amount of the highest bid or the identity of the high bidder; or, alternatively, that a financially responsible person, firm, or corporation, by execution of the auction listing contract or by otherwise furnishing to the auctioneer written evidence of a binding commitment therefor, shall have absolutely guaranteed the forthwith and complete discharge and satisfaction of any and all liens and encumbrances immediately after the sale or at the closing, without regard to the amount of the highest bid received, or the identity of the high bidder[.]

KRS 330.220(3)(a).

The trial court's order dismissing the Fords is affirmed.

## STANDARD OF REVIEW ON SUMMARY JUDGMENT

Appellate courts employ a *de novo* standard of review on questions concerning the propriety of a trial court's ruling on a motion for summary judgment. *Cmty. Fin. Servs. Bank v. Stamper*, 586 S.W.3d 737, 741 (Ky. 2019). In the seminal case of *Steelvest, Inc. v. Scansteel Service Center, Inc.*, the Kentucky Supreme Court explained that "the proper function of summary judgment is to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor." 807 S.W.2d 476, 480 (Ky. 1991). In reviewing such a motion, the trial court must view the facts "in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor" and in so doing must examine the proof to ensure that no real issue of material fact. *Id.*

## ANALYSIS

*Partial Summary Judgment Dismissing Gibson's Claims
Against Jones and Tara, Incorporated*

Upon motion, the trial court entered an order granting summary judgment in favor of Jones and Tara, Incorporated which dismissed the claims Gibson had forwarded in his complaint.

The court found that Jones and Tara, Incorporated had legal title to and were in actual or constructive possession of the disputed property because not only did their deed so describe, but they had taken pains to have a surveyor establish the boundaries described in the deed and affirm that Jones was not attempting to auction any property owned by Gibson, and that there was no overlap in the descriptions in the deeds. The court noted that Gibson had provided no affirmative evidence, apart from the self-serving "deed of correction," to establish his claim.

Summary judgment is appropriate when it is determined that there is no "genuine issue of material fact." The trial court so determined, finding that Gibson's bare assertions, coupled only with the self-serving and non-credible "deed of correction," did nothing to establish that he held title to any portion of the land described in the deed held by Jones and Tara, Incorporated, especially after Jones had a surveyor review the deed and establish the boundaries described in the deed on the land. As Gibson had not provided any notice of expert testimony by the CR 26.02(4) deadline, the court reasoned he was not permitted to present testimony conflicting with that of Jones' surveyor. Thus, the evidence provided by Jones was the only reliable evidence of the borders of the properties, and it established no overlap and that Jones was not attempting to auction any property which he did not own.

The trial court noted that the "deed of correction" attempted to describe different property than the deed Gibson was given in 1988 when he purchased the property, which in itself was a tacit admission that the 1988 deed did not convey to Gibson property which he later attempted through the "deed of correction" to attach. "It is elementary that a deed can only convey title to land actually owned by grantor and the grantee takes no greater title under a deed than the grantor had." *York v. Perkins*, 269 S.W.2d 242, 243 (Ky. 1954) (citing 26 C.J.S., Deeds, § 104b, p. 382; *Buchanan v. Crucible Steel Casting & Metal Co.*, 5 Ky. Law Rep. 178; KRS 381.150). Thus, the trial court properly found the "deed of correction" to be "wholly invalid" as it purported that Gibson was granting to himself land to which he did not hold title, as was described in the 1988 deed by which Gibson took title.

The trial court's granting of summary judgment is affirmed.

*Judgment on Damages*

Following the entry of summary judgment in favor of Jones and Tara, Incorporated, they sought judgment and an order addressing damages. A hearing was held, and Jones and Tara, Incorporated presented testimony of witnesses and evidence to support their claim of damages and their claim for punitive damages and costs associated with defending Gibson's action.

The court found that Jones was damaged by Gibson's slander of title, negligence, and nuisance by loss of rental value of the lots from Gibson's commencement of the action until the holding of the damages hearing in an amount totaling $24,750.00.[8]  Such amount was calculated using testimony and evidence concerning the fair rental value of the property.  The court found that Jones had proven damages in that both the auction had to be canceled and a party which had made an offer to purchase the property withdrew that offer because of the action of Gibson clouding the title.  That offer was for $20,000.00.

Slander of title requires one to establish "special damages."  Such damages include diminution of the fair market value of the property or loss of the proceeds of sale.  As set forth in *Bonnie Braes Farms, Inc. v. Robinson*, 598 S.W.2d 765 (Ky. App. 1980):

> In order to maintain a slander of title action in this jurisdiction, the plaintiff must plead and prove that the defendant has knowingly and maliciously communicated, orally or in writing, a false statement which has the effect of disparaging the plaintiff's title to property; he must also plead and prove that he has incurred special damage as a result. Contrary to appellant's contention at oral argument, if special damage has not been incurred, the action is not maintainable . . . .  The special damage required may consist of either a loss by the plaintiff of a sale of his property or a diminution in its fair market value.

---

[8] The amount was actually $27,000.00 but was reduced by $2,250.00 to not duplicate damages from the loss of the sale to the buyers who backed out on a sale of a portion of the property because of the clouded title.

*Id.* at 766-67 (citations omitted).

> We find the analysis of slander of title claims in *Pond Place Partners, Inc. v. Poole*, 351 S.C. 1, 567 S.E.2d 881, 890-91 (S.C. Ct. App. 2002), to be instructive:
>
> > Slander of title is grounded in the tort of injurious falsehood. *See id.* ("Both torts are specific examples of the general tort of injurious falsehood and the same privileges which apply to the torts of personal defamation apply to the tort of injurious falsehood."); *Zamarello v. Yale*, 514 P.2d 228 (Alaska 1973); *Procacci v. Zacco*, 402 So.2d 425 (Fla. Dist. Ct. App. 1981).

*Ballard v. 1400 Willow Council of Co-Owners, Inc.*, 430 S.W.3d 229, 235 (Ky. 2013).

The court found that Jones and Tara, Incorporated would have been entitled to the same amount of damages under a negligence theory because Gibson's negligence in claiming property to which he had no cognizable claim resulted in the loss of the rental value and the disruption of the sale. "Although admittedly an elusive concept, the customary measure of damages or injuries of a temporary character is an amount which will reasonably compensate the injured parties for the diminution in the value of the use and occupancy of the property." *Bishop v. Rueff*, 619 S.W.2d 718, 721 (Ky. App. 1981), *overruled on other grounds by Oliver v. Schultz*, 885 S.W.2d 699 (Ky. 1994) (citing *City of Danville*

*v. Smallwood*, 347 S.W.2d 516 (Ky. 1961); *Price v. Dickson*, 317 S.W.2d 156 (Ky. 1958)).

The court similarly found that nuisance, loss of use, and loss of quiet enjoyment would have resulted in damages to Jones and Tara, Incorporated. Pursuant to KRS 411.560:

(b) If the nuisance is a temporary nuisance and:

. . .

2. The claimant did not occupy the property during the continuance of the nuisance, compensatory damages shall be measured by the diminution in the fair rental value of the property which resulted from the nuisance.

Therefore, under any of the available theories, Jones and Tara, Incorporated were entitled to the damages awarded. Finally, the court found that Jones had provided sufficient evidence to entitle him to $14,904.02 in attorney's fees, costs, and expenses of litigation, as punitive damages.

The court entered a judgment in the amount of $62,654.02, plus the costs "herein expended." As the total amount of damages listed adds up to only $59,654.02, it is determined that the extra $3,000.00 awarded was for the costs "herein expended."

The judgment is affirmed.

ALL CONCUR.

-15-

BRIEFS FOR APPELLANT:

John A. Combs
London, Kentucky

BRIEF FOR APPELLEES RON
JONES AND TARA,
INCORPORATED:

Molly K. Hardy
Somerset, Kentucky

BRIEF FOR APPELLEES FORD
BROTHERS, INC. AND MATT
FORD:

John D. Ford
London, Kentucky